## CITY OF DEADWOOD v. WHITTAKER.

1. One who enters on an Indian reservation and attempted to locate a mining claim, to which, after the treaty opening the reservation, he was given a patent, had, prior to such treaty, sufficient right in such claim to part with a portion thereof by dedication for a highway, and, the

public having his consent to their use of the land and that of the United States under Rev. St. U. S., § 2477, granting a right of way for the construction of highways over public lands not reserved for public use, they acquired a valid title by such dedication, of which no subsequent acts of the patentee or his grantees could deprive them.

2. Where one consented to a platting and laying out of lots and streets, which plat included a street, a portion of his claim, and he subsequently conveyed such claim, describing it according to the plat, there was a dedication of the portion taken for the street.

(Opinion filed February 7, 1900.)

Appeal from circuit court, Lawrence county. Hon. A. J. PLOWMAN, Judge.

Action by the city of Deadwood against Thomas Whittaker to recover a portion of a street. From a judgment for plaintiff, defendant appeals. Affirmed.

*Charles E. Davis,* and *G. C. Moody,* for appellant.

In order to constitute a common law dedication or dedication other than by grant, the owner must evince a clear intention to surrender his property to public use, his acts and declarations must be deliberate, unequivocal, and decisive manifesting a positive and unmistakable intention to permanently abandon his property to public use. Hogue v. City of Albine, 10 L. R. A. 675; McCormack v. Baltimore, 51 Md. 609; Shellhouse v. State, 110 Ind. 513; Tucker v. Conrad 103 Ind. 349; Holdone v. Cold Springs, 21 N. Y. 477; Lownsdale v. Portland, 1 Or. 405; Niagara Falls S. B. Co. v. Buckman 66 N. Y. 261.

Whether or not a certain place is a street is a question of fact. The opinion of a witness as to the existence or non-existence of this ultimate fact is not material or competent, and its admission is error. Teerpening v. Insurance Co., 43 N. Y. 281; 1st Lawson Expert and Opinion Ev. p. 1; 1st Rice on Ev. 326; Stevens Digest of Ev. Art. 48.

*W. G. Rice* and *John R. Wilson*, for respondent.

Cited:   Sec. 2477 Revised Statutes U. S.; Railroad v. Majors, 2 Pac. 322; Muray v. City of Butte, 14 Pac. 676; City of Cincinnati v. White's lesees, 6 Pet. 431; Smith v. Town of Flora, 64 Ill. 93; Reed v. Edina etc., 73 Mo. 295; Elliott, Roads and Streets, §§ 112, 380;   Angell on Highways, § 149; Bartlett v. Bangor, 67 N. W. 460; 2 Dillon on Municipal Corporations, § 662; Dummer v. Jersey City, 20 N. J. L. 540; Hannibal v. Draper, 15 Mo. 634; Weeping Water v. Reed, 21 Neb. 261; Chicago v. Wright, 69 Ill. 322; Wood v. Conrad, 2 S. D. 406; St. Louis v. Excelsior, 10 S. W. 477; Ritchie v. South Topeka, 16 Pac. 322.

CORSON, J.   This was an action to recover a portion of a street in the city of Deadwood, known as "Seiver Street," alleged to be unlawfully withheld by the defendant.   The findings and judgment were in favor of the plaintiff, and the defendant appealed.

The principal question involved in this case arises upon the court's findings and conclusions of law, the material portions of which are as follows:   "That the premises in controversy in this action and described in the complaint herewith are a portion of, and included within the exterior limits of, mineral claim or lot 152, and that a patent for said mineral claim or lot 152 was issued by the United States to Michael Early on the 30th day of June, 1880.   Third, That at the time of the issuance of the said patent. and long prior thereto, the said Michael Early was the sole and absolute owner and in possession of the said mineral claim, and while the sole and exclusive owner and in possession thereof, and long before the

defendant had or acquired any interest in the said premises or mineral claim, the said Michael Early duly dedicated that certain portion of said mineral claim or lot 152 described in the complaint as Seiver street to the use of the public as a street for the public use, and that the same has been ever since, and now is, used as such by the public." That on or about the first day of January 1884, the defendant did enter upon said described premises, to-wit, Seiver street, and did use and occupy that portion of said street described as follows: About five feet in width of said street in the rear and adjacent to lots 22 and 24, block 27, and being 50 feet in length, according to the official map of the city of Deadwood. "Fifth. That defendant now occupies and holds the said described portion of Seiver street, and has ever since on or about the 1st day of January, 1884." The court concludes as a matter of law: "That plaintiff is entitled to the possession of the said premises, towit, that portion of Seiver street" described in the finding. The city of Deadwood constituted a part of the Great Sioux reservation, which was opened to settlement by the treaty with the Sioux Indians ratified February 28, 1877. Notwithstanding that parties going upon the reservation prior to that time, without a license from the government of the United States, were trespassers, large numbers did in fact go there during the year 1876, and prior thereto, and attempted to locate mining claims within the limits of the reservation. Deadwood City seems, from the record, to have included within the settled portion thereof placer mining grounds, and as early as May, 1876, a part of placer claim No. 16, above discovery on Whitewood creek, and later patented as M. C. 152, was laid out in lots, blocks, streets, and alleys, which streets and alleys were then, and ever since have been,

used by the public as public highways and streets of that city. One Michael Early, mentioned in the findings, claimed to be the owner of this placer claim under a location notice recorded in the local district records in January, 1876, and for which he received a United States patent in 1880. In August, 1876, said Early conveyed to one Mark Boughton one of the lots so laid out describing it as follows: "Lot No. twenty six (26), of twenty five (25) feet front and one hundred (100) feet deep, and in block No. three (3), on Sherman street in the city of Deadwood, in the county of Lawrence, in the territory of Dakota." By a subsequent resurvey of the city the lots and blocks were renumbered. Boughton went into possession under this deed, and subsequently, in June, 1877, conveyed the same to the defendant, who still claims to be the owner of the property; said lot being described in the findings by its new number. Seiver street is in the rear of said lot. In 1876 it was an alley, and at what date it took the name of Seiver street does not appear. The use of this alley or street by the public as a highway was not, so far as the record discloses, objected to by Early Appellant contends that there is no evidence to support the third finding, as there is no evidence that Early did any act indicating an intention to dedicate any portion of his claim to the public use as streets or alleys subsequent to the ratification of the treaty with the Sioux Indians on February 28, 1877, and he contends that any act of dedication prior to that time on the part of Early was the act of a trespasser, and null and void, and that no rights could be acquired by the public thereunder. Respondent insists that, while the placer claimant could acquire no legal title to a mining claim prior to the ratification of the treaty, he could acquire an inchoate right that might subse-

qently ripen into a title, and that his acts and declarations indicating an intention to dedicate a part of his claim to public use as streets and alleys, upon the faith of which the public acted, though made prior to February 28th, would be binding upon him subsequent to that date.    The right acquired by miners on the Indian reservation prior to and subsequent to the ratification of the treaty was fully considered by the supreme court of the United States in Noonan v. Mining Co., 121 U. S. 393, 7 Sup. Ct. 911, 30 L. Ed. 1061, affirming the decision of the supreme court of the territory in the same case, appealed to that court under the title of Mining Co. v. Noonan, 3 Dak. 189, 14 N. W. 426.    In that case the court says: "The presence of the miners on the reservation up to that time was illegal, but from that time it was legal.    Those then in possession of mining claims, which had been taken up and developed in accordance with the rules of miners in mining districts of the country, were entitled to protection in their possessory claims as against the intrusion of others.    The effect of the withdrawal of the district from the reservation and the consequent end of the prohibition, was to leave the predecessors of the plaintiff exempt from liability to be disturbed for their unlawful entry on the land, and free to take measures under the mining laws for the perfection of their claims.    Evidence of what had been done by them, the location of their claim, its extent, the amount of work done in its development, was competent, not as creating an absolute right to the property, but as showing the existence and condition of the property when their possession became lawful under the new agreement.    Whether they should be protected in holding the property afterwards depended upon their future compliance with the laws, statutory and mining, governing the

possession and use of mineral lands in Dakota. The rule laid down by the supreme court of the territory is, in our judgment the correct one that should govern cases of this kind, and that is substantially this: That, where a party was in possession of a mining claim on the 28th of February. 1877, with the requisite discovery, with the surface boundaries sufficiently marked, with the notice of location posted, and with a disclosed vein of ore, he could, by adopting what had been done, causing a proper record to be made, and performing the amount of labor, or making the improvements necessary to hold the claim, date his rights from that day; and that such location and labor and improvements would give him the right of pos-sesion. By this rule substantial justice is done to all parties who were entitled to protection in their mining claims when the new agreement took effect." The same rule has been held applicable to placer mining locators. While Early could acquire no absolute right to his claim prior to the ratification of the treaty, he did acquire a right which was recognized as superior to the rights of other parties, and a right the courts were bound to protect, and a right that in 1880 ripened into a patent. If, therefore, it was competent for Early to prove his prior acts in support of his title, we are unable to discover any rule of law that would exclude evidence of his acts and declarations tending to prove that while so in possession he dedicated a portion of his claim to public uses, and that on February 28th the public was using the streets and allies so dedicated, when the treaty was ratified. The public was in possession of such streets and alleys, not only with the consent of Early, but with the consent of the United States. Section 2477, Rev. St. U. S. That section reads as follows: "The

right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." The public mineral lands of the United States are reserved from sale, except as expressly directed by law (Section 2318), but they are not reserved from public uses (Murray v. City of Butte, 7 Mont. 61, 14 Pac. 656.)

The learned counsel for appellant contends that Early's patent dates back to January 26, 1876, when he recorded his location notice in the district records. But this contention is not sustained by the supreme court of the United States. In the Noonan Case, *supra*, it was distinctly held that the locator's right could only date from February 28, 1877. Assuming, therefore, that Early was in possession of his placer claim on February 28th, the public was also rightfully using the streets and alleys and in possession of the same for highway purposes, with Early's consent and the consent of the United States. It is true, the right of the public was only an easement, and was not inconsistent with Early's right to acquire the fee subject to this easement in the public, but it was nevertheless a right of which the public could not be deprived by any subsequent acts of Early or his grantees. We are of the opinion that the acts of Early in making the deed to Boughton, coupled with his failure to object to the use of the street by the public clearly shows an indication to dedicate the easement in such streets and alleys to the public, and that the court's finding was fully justified by the evidence in the record, as acceptance by the public by actual use is sufficient to constitute a legal acceptance. Maywood Co. v. Village of Mayfield, 140 Ill. 216, 29 N. E. 704. While it was not proven that Early did in fact plat his land into lots and blocks, leaving streets and alleys,

the inference is a fair one that, as he claimed the property, and executed a deed to a lot by number of lot and block, he did so plat it, or consented to such platting. Mason v. City of Sioux Falls, 2 S. D. 640, 51 N. W. 770. It is true that it appears by the cross-examination of some of the witnesses for the plaintiff that about the middle of March, 1877, Early did make some attempt to cut a bedrock drain on Sherman street, and did attempt to block up Deadwood street, or a part of it, and that he retained possession of a small portion of Deadwood street for some years; but at that time the right of the public to use the streets and alleys had become fixed, and Early could not deprive it of such right. When, therefore, he accepted his patent, he did so subject to the rights of the public acquired by it under its use and possession of the streets as highways on February 28, 1877, with his consent and the consent of the United States, and his grantees occupy no better position. We are of the opinion that the findings of the court are fully sustained by the evidence, and our conclusion is that the judgment of the circuit court should be affirmed. The judgment of the circuit court and order denying a new trial are affirmed.