SWEATMAN *et al* v. BATHRICK.

1.   The conclusion of the court in an action involving the dedication of a street, tried to the court without a jury, that the street was never "legally" dedicated to the public, was properly designated as a conclu-

sion of law, and was reviewable on appeal; the word "legally" clearly indicating that the court referred to a statutory dedication.

2. Where the owners of the land platted it, and laid out blocks and streets, including a street, and afterwards, by four separate conveyances, recognized a subsequent plat by the city engineer, showing a changed location of the street, and made no objection to the public use of the street as so changed, there was a dedication of the street, not only as originally platted, but as changed by the second plat.

3. Under Comp. Laws 1887, § 2783, providing that an owner of land bounded by a public way is presumed to own to the center of the way, unless the contrary is shown, and section 3252, providing that a transfer of land bounded by a highway passes title to the center thereof, unless a different intent appears, a conveyance of property fronting on a road or street will be presumed to carry title to the center of the way, unless the fee therein is expressly reserved.

4. A conveyance describing a triangular piece of land as commencing at the northwest corner of L. and S. streets, thence northerly along S. street, thence southwest along a certain line to L. street, and thence easterly to the place of beginning, passed title to the center of the street, and did not show an intent to limit the title conveyed to the line of the street.

5. In determining whether a grantor conveying a lot abutting on a street retained title to the land used for the street, it is immaterial whether the street was used by the public under a common-law or a statutory dedication.

6. Where the court found for plaintiffs in an action to quiet title as to part of the property described in the complaint, it was error to dismiss the complaint on a finding for defendant as to the part particularly contested; plaintiffs being entitled to a decree as to the part found to belong to them.

(Opinion filed June 3, 1903.)

Appeal from circuit court, Lawrence county; Hon. JOSEPH B. MOORE, Judge.

Action by V. C. Sweatman and another against Daniel D. Bathrick. Judgment for defendant. and plaintiffs appeal. Reversed.

*Edwin Van Cise* and *C. E. DeLand,* for appellants.

In an implied common law dedication, the use of such land by the public as a street, with the knowledge of, and without objection by, the owner, of the fee for a number of years, is evidence of such dedication, and from such user by the public, without objection by the owner of the fee, a jury may presume an actual dedication of such street to the public use.    Mason v. City of Sioux Falls et al., 2 S. D., 640; Logan v. Rose, 26 Pac. Rep. 106; Reed v. Birmingham, 9 So. Rep., 161; Eureka v. Armstrong, 22 Pac. Rep., 928. Brown v. Stark, 24 Pac. Rep., 162; Hicklin v. McClear, 22 Pac. Rep. 1057; Giffen v. Olathe, 24 Pac. Rep., 470; Archer v. Salinas, 28 Pac. Rep., 839; Steele v. Portland 31 Pac. Rep., 479; San Francisco v. Burr 36 Pac. Rep. 471; Danforth v. Bangor, 27 Atl. Rep. 268; Pillsbury v. Alexander, 58 N. W. Rep., 859; Winter v. Payne, 15 So. Rep., 211; U. P. R. R. Co. v. Spokane, 56 Fed. Rep., 915; Lord v. Atkins et al., 33 N. E. Rep., 333; Helm v. McClure, 40 Pac. Rep.. 437; Fereday v. Mankedick, 34 Atl. Rep., 46; Av. Land Co. v. Avondale, 21 So. Rep., 318.

The grant carried the fee to the middle of the street, and, on vacation of that part of the street it went as an accretion to the adjoining lot.    Cox v. Friedley, 33 Pa. St., 124; Ott v. Kiester 110 Pa. St,, 370; Champlin v. Pendleton 13 Conn. 23; Chatham v. Brainerd et al., 11 Conn., 60; Stiles v. Curtis, 4 Day 338; Reed v. Leeds, 19 Conn. 182; Benham et al., v. Potter et al., 52 Conn. 248; Gear v. Barnum, 37 Conn., 229; Hunt v. Rich. 38 Me., 195; Cottle v. Young 59 Me., 105, 109; Oxton v. Groves, 68 Me., 371; Law v. Tibbetts, 72 Me., 92.

*Benjamin T. White, James R. Sheean* and *Ivan W. Goodner,* for respondent.

Implied dedication does not proceed upon the theory that a grant has been made, but that the owner of land, in setting it aside for public use and permitting it to be so enjoyed until public or private rights have been acquired with reference to it, and which would be destroyed by a discontinuance of the use, is estopped from denying the right to its continuous enjoyment.    Cincinnati v. White, 6 Peters U. S. 431.

The vital principle of dedication is the intention to dedicate.    American and English Ency. of Law, Vol. 9, 2nd ed. p. 34.

Where without judicial proceeding or compensation or solemn form of conveyance, it is sought to establish *in pais* a divestiture of the citizen's landed property in favor of the public, the proof ought to be so cogent, persuasive and full as to leave no reasonable doubt of the existence of the owner's intent and consent; and the conduct and acts relied on to establish intent should be inconsistent and irreconcilable with any construction except such consent.    Landis v. Hamilton, 77 Mo. 554.

Intention to dedicate, must be clear and unequivocal, and this the evidence must show.    Elliott on Roads and Streets, p. 120; Irwin v. Dixon, 9 Howard U. S. 31.

One can not acquire title to abutting private ground by procuring the title to adjoining piece of private ground. Jackson v. Hathaway, 15 Johns 447; Harris v. Elliott, 10 Peters, U. S. 25, 53-54; Brown v. Taber, 103 Ia , 1-5; Mendel v. Whiting, 31 N, E. Rep. 431; Potomac Steamboat Co. v. Upper Pot. S. Co., 109 U. S. 672, 685; New Orleans, etc., Ry. Co. v. Parker, 143 U. S 42 55.

Where the intention to exclude the soil of the street is evident from the terms of the grant, as where the land is described

as bounded by "the side of," or "by the margin of," or "by the line of," the street, the boundary will be the nearer edge and not the center of the highway.   American and English Encyclopedia of Law, second edition. Vol. 4, pp. 813-814.

Corson, J: This is an action to quiet title to a strip of land in the city of Deadwood embraced within the limits of Lee street, as the lines of said street formerly existed and the lines as subsequently changed; being about 23 feet on Sherman street and about 30 feet on Lee street.   The action was tried by the court without a jury, and, the findings and judgment being in favor of the defendant, the plaintiffs have appealed from the judgment alone; there being neither a motion for a new trial, nor a bill of exceptions.   The only question presented, therefore, is, did the court draw proper conclusions of law from the findings?

The complaint is in the usual form, alleging that the plaintiffs are the owners of the premises in controversy, and that the defendant claims some right, title, and interest therein adverse to the plaintiffs, and that such claim of the defendant is without right.   The defendant. in his answer, denies that the plaintiffs are the owers of the premises. and denies that his claim to the property is without right, and alleges that he is the owner in fee, in the possession, and entitled to the possession of a part of the premises in controversy.   To this answer the plaintiffs filed a reply denying each and every allegation contained in the defendant's affirmative defense, and alleging that the said defendant ought not to be allowed to set up or assert title to the said strip of ground mentioned in the said answer, but should be barred and estopped from

claiming or asserting title thereto for the reasons therein specified. The court finds, in substance, that Lee street in the city of Deadwood connects Main street and Sherman street, the two principal streets of said city, and that the whole of said Lee street is embraced within the exterior boundaries of a placer mining claim patented to Henry Suessenbach and his associates prior to July 12, 1882, as mineral lot or survey No. 86; that on the last mentioned date the said Suessenbach and his associates caused to be surveyed thereon by one P. G. Ault a part of the streets and blocks of said city of. Deadwood, and a plat of such survey to be made, thereafter known and referred to as Ault's plat or map of the said city; that surveyor Ault attached his certificate and acknowledgment to this plat, but no acknowledgment or certificate of the owners thereof appears upon the same, and the said plat was recorded July 17, 1882. Subsequently, in the spring of 1884, after the flood of 1883, the people of Deadwood and others traveling thereon changed the line of travel along Lee street so as to deflect and swing a part of the said street, or the easterly half thereof, running from Whitewood creek to a junction with Sherman street about 90 feet south from where it had formerly joined said street as indicated on Ault's plat; and Lee street, as thus changed, was traveled and used by the public and recognized by the city, while the former easterly and northerly half of Lee street was left unused by the city and the public, and treated as vacated. In 1886 the city engineer, P. L. Rogers, made a new plat of the said city, resurveying and renumbering the lots and blocks and portions thereof which had been platted by the said Ault as heretofore shown, and locating Lee street as then and up to 1888 recognized and traveled by the

public. This plat was finished early in the year 1887, and afterwards conveyances were made, recognizing and referring to the same. This plat was approved by the city council January 3, 1888, and thereupon with certificates of the said P. L. Rogers and the mayor of the said city upon the face thereof, was suspended in the office of the engineer of the said city, where it has ever since been kept. There was, however, no evidence of any proceedings, by way of condemnation or otherwise, on the part of the said city, to acquire a title or easement to Lee street as taken and traveled after the flood of 1883, nor was there any evidence of protest or objection to the use of said street by or on behalf of the owners of the mineral lot No. 86. On October 15, 1888, one Jas. K. P. Miller, representing himself as the owner of, or as having under his control, nearly all of the property along Lee street from Whitewood creek to Sherman street, made the city council of Deadwood a proposition, and accompanied the same with a plat attached thereto, offering to straighten said Lee street in accordance with the direction indicated upon the map presented, at his expense. The said proposition was accepted by the city council on the 15th day of October, 1888, and the said Miller was authorized to grade and improve said Lee street as proposed by him. Immediately after this action of the city council, the change in Lee street which had been authorized was made, and the street as changed, was thereafter used by the public. This change moved Lee street about 23 feet southerly from where it had been before. On the 3d day of January 1891, said Rogers, being the city engineer of said city of Deadwood, made a map showing the lots, blocks, and street lines of Lee street as it had

been changed by the action of the city council before referred to. This plat was approved by the city council as the city map of the city of Deadwood on January 5, 1891. On the 11th day of November, 1887, Suessenbach and his associates sold and conveyed by deed ''that certain fraction of ground commencing at the northwest corner of Sherman and Lee streets running northerly along Sherman street 17 feet more or less, thence southwesterly along the southeasterly line of the present Star and Bullock lot 30 feet more or less to Lee street, thence in an easterly direction 30 feet more or less to the place of beginning.'' The court finds that other deeds were made by Suessenbach and his associates to different parties showing that the mineral claimants recognized Lee street and the Ault survey. and also the Rogers survey. From these findings the court concluded, as matters of law: ''The land platted as Lee street by Peter L. Rogers in the plat referred to in finding No. 4 was never legally dedicated to the public by the owners thereof. (2) The deed of Henry Suessenbach, Hugh McCaffrey, Daniel McLaughlin, and William R. Steele, of date November 11, 1887, referred to in finding No. 3, shows an intention not to convey to the middle of Lee street, as so indicated in the Rogers plat and hence did not convey anything south of the northerly line of said street as so platted by Rogers. (3) There was nothing in the acts or conduct of said grantors named in second conclusions of law, either evidenced by deed or otherwise, that would constitute a recognition on their part of Lee street as platted by said Rogers, or estop them from claiming title to the strip of land in dispute, or from executing the conveyances under which defendant claims title in this action. (4) Upon the change of street made by the city of Deadwood in accepting

17 S. D.—10

Miller's proposition of October 15, 1888, the strip of land in controversy, which said city had theretofore been using by sufferance, and now relinquished, did not accrue to the plaintiffs, but remained as it had been all the time, the property of the grantors in the deed of November 11, 1887, named in the second conclusion of law, and they had good right to sell and convey the same. (5) At the time of the bringing of this action, plaintiffs were the owners of all that part of the land in their complaint described lying north of the north line of Lee street, as indicated on Roger's plat, but not to the middle of the street or south of said north line and defendant was the owner of the tract in controversy adjoining plaintiffs on the south side, and claimed in their complaint as an accretion. and there also further described, and as in defendant's answer particularly described. (6) Let judgment and decree be entered accordingly, dismissing the complaint of the plaintiffs upon the merits, and quieting the title of the tract in controversy in the defendant, with costs."

It is contended by the appellants that, notwithstanding Lee street was not legally laid out or dedicated by the owners of the mineral claim, they had, by making conveyances of lots according to the Ault survey and to Rogers' survey, recognized the existence of the street, and are now estopped from claiming that it was not a legal highway. Appellants further contend that by the deed to Star and Bullock, made by the mineral claim owners, in which the boundaries are designated as commencing at the northwest corner of Sherman and Lee streets, and running along said Lee street and Sherman street. carried the title of Star and Bullock to both the center of Lee and Sherman streets, and that the appellants are therefore entitled to the

strip of land in controversy, as an accretion. Appellants further contend that the conclusions of law are clearly inconsistent with the findings of fact. The respondent, on the other hand, insists that the findings of the court that there was no legal dedication of Lee street, and that the defendant is not now estopped by any acts of Suessenbach and his associates from claiming the strip of land in controversy, are clearly consistent with the findings. It is further insisted by the respondent that the first conclusion of law of the court is, in effect, a finding of fact, and is therefore conclusive upon this court. This latter contention is clearly untenable, for the reason that it is evident from the language used that the learned circuit court was referring to legal dedication; that is, dedication provided for by statute. It will be noticed the language used by the court is, "was never legally dedicated to the public by the owners thereof." A common-law dedication (that is, a dedication inferred from acts of the parties) is not usually designated as a legal dedication. The dedication in such cases arises by reason of estoppel. We are of the opinion, therefore, that this conclusion of law was properly designated as a conclusion of law, and included among the court's conclusions. Undoubtedly, as contended by counsel for respondent, there may be cases where a finding of fact is erroneously placed among conclusions of law, and the fact that it is found among the conclusions of law would not prevent the appellate court from treating it as a finding of fact. But such a rule does not seem to be applicable to the case at bar.

It is further insisted by the respondent that at the time Miller conveyed the Star and Bullock property to the plaintiffs, on October 18, 1888, the portion of Lee street lying between the

former north line of Lee street and the new line as established by the city by the adoption of Miller's proposition had been actually vacated, and had reverted to the former owners, Sussen bach and his associates and that the conveyance, therefore, from Miller to the plaintiff, did not include that portion of the street so vacated.

It will be observed from the findings in this case that assuming that Lee street, as originally platted by Ault, was by the acts of Sussenbach and his associates dedicated by them to the public, there is still a further question arising as to the effect of the change made in the easterly end of the street after the flood of 1883, and also after the acceptance by the city of Miller's proposed change. By the first, it will be noticed, the easterly end of Lee street, where it connects with Sherman street, was moved southerly about 90 feet, and that by the change made by Miller it was removed still further south 23 feet, making a change in that end of the said street of 113 feet. We are of the opinion that the findings show that the owners of the placer claim clearly dedicated Lee street as originally platted by P. G. Ault in 1882. Suessenbach and his associates caused the placer claim to be platted as a part of the said city of Deadwood, and laid out thereon said Lee street, connecting Main street with Sherman street. Ault's survey and Lee street were frequently referred to by Suessenbach and his associates in various conveyances made by them. After the flood of 1883, while it is said by the court in its findings that there was no evidence of condemnation proceedings, it is further said in the same connection, ''Nor was there any evidence of protest or objection to the use of such street by or on behalf of the min_ eral claim owners of mineral lot No. 86,'' The court finds that

in October, 1884. Suessenbach and his associates conveyed to one Herman a part of several lots, described as follows: "A certain parcel of land * * * at the junction of the present Lee and Sherman streets lying south of Lee street * * * the same being that part of lots 7, 9, 14, 16 and 18 in Block B as shown on the plat of mineral lot 86 recorded * * * on the southerly side of the present Lee street." The court further finds that on October 4, 1887, the same parties conveyed to Levy "lots numbered one (1), two (2), and three (3) in block K, * * * as the same is now platted on the map of the city of Deadwood by Peter L. Rogers, city engineer of the said city, and being a part of mineral lot number 86." The court further finds that on November 11, 1887, the same parties conveyed to Star and Bullock several pieces, bounding the first by Sherman and Lee street and the Star and Bullock lot, and the second on Lee street, extending 25 feet, more or less, in a northerly direction " * * * all a part of mineral claim number 86 in the city of Deadwood, as platted by P. L. Rogers, city engineer of the said city." The court further finds that on September 5, 1888, the same parties conveyed to J. K. P. Miller "that certain portion of mineral claim number 86, running along Sherman street, * * * lying north of the adjoining lots 1, 2, 3 in block K, in the said city, as the same are platted by P. L. Rogers, city engineer of the said city. The ground intended to be conveyed is marked as lots 6, 7, and a part of lot 8, in block K." All these conveyances seem to have contained the usual covenants of warranty. Title to all these tracts came to the plaintiff, except the Levy lots, which passed from him to Miller, and then to Swift. It will thus be seen that Suessenbach and his associates fully recognized the Rogers plat, and the change made by him in the lines of Lee street.

In the early case of Mason v. City of Sioux Falls, 2, S. D. 640, 51 N. W. 770, 39 Am. St. Rep. 802, this court held; "One of the methods of acquiring the right to the use of land for a street is that of the implied dedication of the same by the owner of the fee. In an implied common-law dedication, the use of such land by the public as a street, with the knowledge of and without objection by the owner of the fee for a number of years, is evidence of such dedication; and from such user by the public, without objection by the owner of the fee, a jury may presume an actual dedication of such street to the public use." In City of Deadwood v. Whittaker, 12 S. D. 515, 81 N. W. 908, this court held, where one consented to a platting and laying out of lots and streets, which plat included a street, a portion of his claim, and he subsequently conveyed a lot, describing it according to the plat, there was a dedication of the portion taken for the street. The same doctrine is recognized in Whittaker v. City of Deadwood, 12 S. D. 523, 81 N. W. 910. In City of Deadwood v. Whittaker, supra, there was only one deed introduced in evidence, executed by the owner of the placer claim in which he made reference to the street, block and lot; but, in the absence of any objection by him to the use of the street by the public, this was held sufficient evidence of the dedication of the street to the public use. In the case at bar, as we have seen, Suessenbach and his associates not only caused the placer claim to be platted into lots and blocks, with streets, but they distinctly recognized the change in the street made by P. L. Rogers' plat, and also of Lee street, as established by the said Rogers, in four separate conveyances. It is quite clear, therefore, that, under the former decisions of this court, the learned circuit court should have concluded Suessenbach and his asso-

ciates had dedicated Lee street, not only as originally platted by P. G. Ault, but as subsequently changed and platted by P. L. Rogers.   This being so, it follows that the conveyance made to Star and Bullock on November 11, 1887, not only conveyed the premises therein described, north of the north line of Lee street, but to the center of the street, south of that line unless a different intent appears from the grant.

Section 2783, Comp. Laws 1887, reads as follows:   "An owner of land bounded by a road or street is presumed to own to the center of the way, but the contrary may be shown." Section 3252 reads as follows:   "A transfer of land bounded by a highway, passes the title to the person whose estate is transferred to the soil of the highway in front to the center thereof unless a different intent appears from the grant."   It is insisted by the respondent that the discription in the deed of November 11th clearly shows that it was intended by Suessenbach and his associates to convey that portion of the premises described lying northerly of the north line of Lee street only. The description is as follows:   "That certain fraction of ground commencing at the northwest corner of Sherman and Lee streets, thence northerly along Sherman street 17 feet more or less, thence southwesterly along the southeast line of the present Star and Bullock lot 30 feet more or less to Lee street, thence in an easterly direction to the place of beginning.   *   *   *   All a part of mineral claim number 86 in the city of Deadwood as platted by P. L. Rogers, city engineer of said city." When we take into consideration the fact that Sussenbach and his associates did, in effect, dedicate Lee street to the public, or at least that the public had acquired the right to use the same as a public highway, it cannot be presumed that by this

conveyance they limited the right of the grantees to the northerly line of Lee street, and retained to themselves an interest in the property between the northerly line of Lee street and the center thereof. It will be noticed that the language of section 2783 is, "An owner of land bounded by a road or street is presumed to own to the center of the way." This presumption may, however, be overcome by proof. Cox v. Freedley, 33 Pa. 124, 75 Am. Dec. 584, presented substantially the same question presented by the case at bar. The action was by Jacob Freedley against the defendant, Cox, to recover a lot of ground situated between the old line of Race street and the line of a new street known as "Markley Street"; this strip being about 34 feet in width and 133 feet in length. Freedley previously conveyed to Cox the certain lot or lots on Race street, described as follows: "All * * * lot or piece of land * * * beginning at a stake on the northeast corner of Egypt and Race streets and thence along the northeast side of the said Egypt street * * * to a stake * * * between this lot and other property of the said Abraham R. Cox, thence along the middle of said * * * alley * * * to a stake on the southwest side of Penn street and thence along the said side of Race street * * * to a stake on the south corner of Penn street and Race street aforesaid and along the southeast side of said Race street to the place of beginning." The trial court instructed the jury, in substance, that under this deed the defendant, Cox, was only entitled to the land to the line of the street, and that Freedley, the plaintiff, was entitled to recover the ground in controversy. These instructions were held erroneous, and the case reversed, by the Supreme Court of Pennyslvania, in which that court uses the following lan-

guage: ''It describes a lot in the borough of Norristown by courses and distances, and by streets and lanes. 'Along the northeast side of Egypt street' and 'along the southeast side of Race street,' are two parts of the description. The measurements of these streets would terminate at their sides, respectively. * * * The dedication of streets, lanes, and alleys divests the proprietor of his right of soil therein, and purchasers of lots bounded on streets acquire title *usque ad filum mediœ,* unless there be a very express limitation of their grants to the margin of the street. The law with respect to public highways and unnavigable streams is the same, in respect to the presumptions that arise from grants bounded thereon; and the general principle is that there must be a reservation or restriction expressed or necessarily implied, which controls the operation of the general presumption, and makes the particular grant an exception, or else the grant carries the grantee to the middle of the stream or highway. * * * On the other hand, there are not wanting authorities to the effect that when the descriptive words are ''by the side of,'' 'by the margin of,' or 'by the line of' the stream, the underlying soil is excluded. Sibley v. Holden, 10 Pick. 240 [20 Am. Dec. 521]; Star v. Child, 5 Denio. 599; Storer v. Freeman, 6 Mass. 435 [4 Am. Dec, 155]. But it was with a knowledge of such authorities. Judge LEWIS remarked in Paul v. Carver, 26 Pa. 223 [67 Am. Dec. 413], that the circumstances of being bounded by the side of a street, instead of the street itself, was entirely too insignificant to produce a result so inconvenient, and so contrary to the practice of the people. * * * Deeds may expressly exclude the streets, but, unless they do, the implication is, from such terms as are found in this deed, that half the

street is included.    Unless we say this, we must reverse Paul
v. Carver, and we see no ground for reversing or questioning a
case so carefully decided.  *  *  *  Terms of description such as
these may be regarded, therefore, as having a technical mean-
ing, and as importing a grant to the middle of the street, unless
controlled by something else in the deed.  *  *  *  Nor can we
regard the intention of the parties, as found by the jury, the
true criterion of construction.    There was no ambiguity on the
face of the deed.    The question raised was, what were the
legal import and significance of the words employed by the
parties?.    That was a question for the court, and not for the
jury.    The jury were no more to measure the legal effect of
these terms, than they would be permitted to judge of words of
inheritance or perpetuity in a deed."    Race street, mentioned
in the opinion. was laid out and opened in 1834.    In 1855 it was
duly vacated, and a new street, called "Markley," was laid out
and opened partially on the bed of the said Race street, but
leaving a strip of ground between the line of the old street and
the line of Markley street.    The defendant took possession of
this strip, and to recover it the action was brought by the
plaintiff, Freedley.    The case of Paul v. Carver, 26 Pa. 223,
67 Am. Dec. 413, above referred to, was also an action to recov-
er the possession of a strip of land between the lines of a
street as it formerly existed and the center of the street, which
street had been vacated,    In that case the Supreme Court of
Pennsylvania says:    "Chancellor KENT declares that 'the es-
tablished inference of law is that a conveyance of land bounded
on a public highway carries with it the fee to the center of the
road, as part and parcel of the grant.    The idea of an intention
in a grantor to withold his interest in a road to the middle of

it, after parting with all his right and title to the adjoining land, is never to be presumed. It would be contrary to universal practice, and it was said in P. ck v Smith, 1 Conn. 103, [6 Am. Dec. 216], that there was no instance where the fee of a high way, as distinct from the adjoining land, was ever retained by the vendor. It would require an express declaration, or something equivalent thereto, to sustain such an inference.' 3 Kent's Com. 433. If no other reason could be assigned in support of this rule of construction, the general understanding of the people and the extensive and immemorial practice of claiming and acquiescing in such rights, ought to have great weight. A contrary opinion would introduce a flood of unprofitable litigation. But the rule has its origin in a regard to the nature of the grant. Where land is laid out in town lots, with streets and alleys, the owner receives a full consideration for the streets and alleys in the increased value of the lots. The object of the purchasers of lots is to enjoy the usual benefits of the streets. The understanding always is that houses may be erected, fronting on the streets, with windows and doors and doorsteps and vaults. These latter always extend beyond the line of the street, and it is necessary that they should so extend. If a right of property in the streets might, under any circumstances, be exercised by the grantor, he might deprive his grantee of the means of entry into or exit from his house, and of all the enjoyments of light and air, and might thereby deprive him of the means of deriving any benefit from his purchase. In the large cities, vaults under the sidewalks for receiving fuel and other necessaries are almost universally constructed. In some instances where lots are owned by the same person on each side of the street, these vaults extend

nearly across it, forming an underground communication between the two properties. Shade trees, posts, awnings, and many other convenient structures are constantly erected. All these might be prohibited by the original grantor, if his right of property remained after parting with the lots. If the streets were to be vacated, of what value would they be to the original grantors, unless for the purposes of annoyance to the lot owners? A long strip of ground, fifty or one hundred feet wide, and perhaps several miles in length, without any access to it, except at each end, is a description of property which it is not likely either party ever contemplated as remaining in the grantor of the lots on each side of it. Influenced by these considerations, the law has carried out the real intention of the party, by holding that the title passed to the center of the street, subject to the right of passage. * * * While they all fully recognize the existence of the rule that a conveyance of land bounded by a highway passes to the grantee a title to the center of the way, there is some difference of opinion in the application of it to particular cases. A rule founded upon policy, and tending to guard against inconveniences of the most alarming character, ought not to be frittered away by distinctions founded on differences in phraseology which might readily escape attention. The paramount intent of the parties, as disclosed from the whole scope of the conveyance and the nature of the property granted, should be the controlling rule." It will be observed that in both of these cases the Supreme Court of Pennsylvania held that the strip of land between the former line of the street and the center thereof vacated belonged to the parties who were the owners of the adjoining lots.

The two sections of our Code above quoted embody the

common law rule, and are substantially copies of sections 268 and 492 of the proposed Civil Code for the State of New York. The commissioners who prepared that Code cite in support of the same Bissell v. N. Y. C. R. Co , 23 N. Y. 61; Wager v. Troy Union R. Co , 25 N. Y. 529.　In the former case cited, the Court of Appeals of New York says:　"The question presented for adjudication in this case is whether the several deeds of conveyance executed by William W. Mumford, between the years 1828 and 1845, to the different individuals, conveying lots on either side of Erie street, in the city of Rochester, carried the lands to the center of that street.　These deeds describe the lots invariably by their numbers, 'reference being had to the allotment and survey made by Elisha Johnson.'　In some cases the size of the lot is given, 'being 33 feet front and rear and 99 feet deep.'　There is no express mention of any street in any of the deeds.　* * *　On this map the lands in controversy are laid down as Erie street, and these lots conveyed lie both on the north and south sides of Erie street.　The simple question, then, is whether a conveyance of a lot bounded on a piece of ground thus laid out upon the map as a street, and called a 'street,' but which is not in fact a public street or highway, carries the grantees to the middle of the street.　The question, so far as it is here presented, involves merely the construction to be given to these deeds.　The inquiry is as to the extent of the grant.　* * *　The idea of an intention in a grantor to withhold his interest in a highway to the middle of the street, after parting with all his right and title to the adjoining land, ought never to be presumed, and all the cases hold that in such a case it requires some declaration of such an intention in the deed to sustain such an inference.　There is no

reason for presuming a different intention in a case like the present." In the case of White's Bank v. Nichols, 64 N. Y. 65, that learned court seemed to have followed the technical rule laid down by the court of Massachusetts and some of the other states in regard to the description of the property contained in the deed as being such as to permit the grantor to retain the fee in the street, but the fee is so limited by the court as to be practically of but little value. The General Term of the Supreme Court had modified the judgment of the Special Term in that case as follows: "Subject to an easement of defendant therein of passage to and from Garden street over the said premises." The Court of Appeals affirmed the modification of the judgment so made by the Supreme Court. The street in that case was laid out 63 feet wide, and by an ordinance of the city council was reduced to 23 feet; the center line remaining the same. The action was brought to recover the strip of land between the old and new lines of the street, being 20 feet in width. It will be noticed, however, that, though the plaintiff was held entitled to recover the land, it was neverless subject to the easement of passage to and from the street over the premises. That court held, in effect, that it was the intention of the parties that the grantee should have egress and ingress to and from the center of the street. In such a case we are clearly of the opinion that, under the provisions of our Code, it is our duty to hold that the title to the fee to the center of the street passes to the grantee. The doctrine of these cases from Pennsylvania and the Bissell Case in New York meet with our approval. There is, it is true, a sharp conflict in the authorities; and while it is conceded by nearly all of them that 'where the deed describes the land as bounded "by,"

"on," or "along" a highway, or the like, it must be construed as conveying the grantor's title in the land to the center of the way, there are cases holding that where the lands are described in the deed "by the side of," "by the margin of," or "by the line" of the street, the boundary will be the nearest edge, and not the center of the way. The cases from Pennsylvania from which we have quoted do not recognize this distinction, and the views of the Pennsylvania court seem to have been adopted by New Jersey, Michigan, Vermont, Wisconsin, Maine, and the United States. Hinchman v. Railroad Co., 17 N. J. Eq. 75, 86 Am. Dec. 252; Champlin v. Pendleton, 13 Conn. 26; Smith v. Lock and Another, 18 Mich, 56; Kneeland v. Van Valkenburgh, Imp., 46 Wis. 434, 1 N. W. 63, 32 Am. Rep. 719; Banks v Ogden, 2 Wall. 57, 17 L. Ed. 818; Low v. Tibbetts, 72 Me. 92, 39 Am, Rep. 303. This distinction seems to be too technical to constitute a rule, and in this conflict of authorities we are at liberty to adopt a rule in this state which will be less technical, and better calculated to carry into effect the intention of the parties and the intention of the Legislature. as expressed in the sections we have quoted, namely, that conveyances of property fronting on a street or highway shall be presumed to carry the title to the center of the street or highway, unless the fee in the street is expressly reserved in the conveyance, as stated by Chancellor KENT and in the cases cited.

The contention of the respondent in the case at bar that as in the description of the deed of November 11, 1887, from Suessenbach and his associates to Miller, and from Miller to the plaintiff in this action, the property is described as commencing at the northwest corner of Lee and Sherman streets, and running thence along Sherman street, thence to Lee street,

and thence to the place of beginning, it limits the title conveyed to the lines of the street, cannot be sustained  It cannot be presumed that the grantors, in making these conveyances, intended to reserve the strip of ground intervening between the north line of Lee street and the center thereof. It affirmatively appears from the findings of the court that Suessenbach and his associates, in making the conveyance to Miller, practically disposed of all their mining claim then undisposed of, as subsequently to that time they only assumed to convey their interest in the ground in controversy, which is claimed by the defendant.

The further contention of the respondent that, inasmuch as there had been no statutory dedication of Lee street, the title of the street therefore remained in the grantors, is also, we think, untenable, in this state, where the courts have made no distinction between a common-law and a statutory dedication except in vesting title in the corporation in certain cases of statutory dedication. Section 1099, Comp. Laws; Edmison et al. v. Lowry, 3 S. D. 77, 52 N. W 583, 17 L. R. A. 275, 44 Am. St. Rep. 774.

It is further contended on the part of the appellant that this case must be reversed, in any event, for the reason that the court erred in dismissing the action as to the plaintiff without quieting his title to the property described in the complaint lying northerly of the north line of Lee street. As will have been observed, the plaintiff claims to be the owner of certain pieces or parcels of land (describing them), including lot 10 and fractions of lots particularly described in the complaint, and also the strip of land lying between the north line of Lee street, as that street formerly existed, and the line

as changed by Miller. The findings of the court are in favor of the plaintiff as to all the property described in the complaint, except the strip of land last mentioned. It was clearly the duty of the court, therefore, to have entered a decree in favor of the plaintiff, quieting his title to the property so lying north of the north line of Lee street in any event, instead of dismissing his complaint.

As the findings in this case seem to be satisfactory to both parties, the judgment of the court below is reversed, and that court is directed to enter a judgment in favor of the plaintiff, quieting his title to all the property described in the complaint.