1996 SD 65

**Wayne PLUIMER, Plaintiff and Appellant,**

v.

**CITY OF BELLE FOURCHE, a Municipal Corporation, Defendant and Appellee.**

No. 19282.

Supreme Court of South Dakota.

Considered on Briefs Feb. 14, 1996.

Decided June 5, 1996.

Dwight A. Gubbrud of Carr & Pluimer Belle Fourche, for plaintiff and appellant.

Wesley W. Buckmaster of Buckmaster & Macy Belle Fourche, for defendant and appellee.

SABERS, Justice.

[¶ 1] The trial court affirmed the City's right to assess the cost of constructing a sidewalk against Pluimer and he appeals. We affirm.

## FACTS

[¶ 2] On August 2, 1957, a plat was recorded of Lot H–3 in Belle Fourche, South Dakota. Lot H–3 was surveyed and platted for the relocation of U.S. Highway 85. Lot H–3 was conveyed by warranty deed from Harry, Clifford, Lloyd, and Doris Gay and Patricia Frank to the State. The deed stated in part:

> ... Grantors ... in consideration of Six thousand three hundred thirty three DOLLARS GRANTS, CONVEYS AND WARRANTS to the State of South Dakota, grantee ... A strip of land over and across the E 1/2 SE 1/4 of section 3, Township 8, Range 2 in Butte County, South Dakota, more particularly described as follows; Lot H–3 in the E 1/2 SE 1/4 of Section 3, Township 8 North, Range 2 East of the B.H.M .... as shown by plat made by H.C. Rempfer, Registered Land Surveyor ... Said Lot H–3 contains 6.33 acres, more or less. The transfer of the above property is to include "CONTROLLED ACCESS." [1]

---

1. SDCL 31–8–1 provides in part:

   [A] controlled-access facility is defined as a highway or street especially designed for through traffic, and over, from, or to which owners or occupants of abutting land or other persons have no right or easement or only a controlled right or easement of access, light, air, or view by reason of the fact that their property abuts upon such controlled-access facility or for any other reason.

The plat of Lot H–3 contains a notation: "Showing Right-of-Way to be acquired for highway purposes." It also contains a "Certificate by Owner," which provides in part:

> ... Lot H–3 ... as shown and represented by said survey and plat, is hereby intended for and dedicated to the public for a public highway and road, *but this dedication shall not be taken to be a grant or donation of the fee of said highway or road as shown on said plat.*

(Emphasis added.)

[¶ 3] Three months later, a plat of Northgate Addition to the City of Belle Fourche was recorded which includes Lots 1 through 6 in Block 1 of Northgate Addition, which Lots are immediately west of Lot H–3. Apparently, Pluimer purchased lots 3 through 6 from Elizabeth Gay, Lloyd and Ida Gay, and Clifford and Blanche Gay.[2] Pluimer purchased Lots 1 and 2 of Block 1 from Dale and Lola Humbracht in September 1974. The property was conveyed by warranty deed and described as follows: "Lots 1 and 2 of Block 1 of Northgate Addition to the City of Belle Fourche, Butte County, South Dakota." The plat map of Northgate Addition is attached to this opinion.

[¶ 4] Lot H–3 provides 100 feet on each side of the center line of the highway. The current highway is 64 feet wide, with 32 feet on each side of the center line. Therefore, the State has 68 feet of undeveloped right of way on either side of the center line. The State refuses to abandon its excess right of way.

[¶ 5] In February 1993, the City notified property owners of planned sidewalk construction in October 1993. Pluimer contacted the Street Committee and indicated he would like his property removed from the proposed orders until questions were resolved, such as whether his property abutted or fronted the proposed sidewalk.

[¶ 6] The City constructed a sidewalk next to the curb of Highway 85 and assessed the costs against Pluimer's Lots 1 through 6. The total amount of the assessment was $3,089.50. Pluimer's first installment was $617.90. Pluimer filed a declaratory judgment action. He claimed the City's special assessment was void because his property is not "fronting or abutting upon the sidewalk," which is required under SDCL 9–46–5.[3]

[¶ 7] No genuine issues of material fact appear to exist. Both parties moved for summary judgment. The trial court granted summary judgment to the City. The trial court held:

> [Pluimer] is the fee simple owner of Lots 1—6, Block 1, Northgate Addition, City of Belle Fourche, Butte County and also owns to the center line of the adjacent highway right-of-way described as Lot H–3 ... and ... that [Pluimer] is therefore, an abutting and fronting owner within the meaning of SDCL 9–46–5.

Pluimer appeals.

[¶ 8] The standard of review on a motion for summary judgment is " 'whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law.' " Flugge v. Wagner, 532 N.W.2d 419, 420 (S.D.1995) (quoting Farmers & Merchants State Bank v. Teveldal, 524 N.W.2d 874, 877 (S.D.1994)).

### [¶ 9] 1. Whether the conveyance of Lot H–3 to the State created a highway easement or fee simple title?

[¶ 10] City claims Pluimer's land extends to the center line of Highway 85. City claims State holds an easement over Pluimer's land for highway purposes only and that Lot H–3 is merely a description of that easement.

---

**2.** Pluimer asserts in his brief that the Gays conveyed Lots 3 through 6 to him by quitclaim deed. However, there is no copy of the quitclaim deed in the settled record.

**3.** SDCL 9–46–5 provides:
The cost thereof shall be assessed against the lots fronting or abutting upon the sidewalk so constructed, reconstructed, or repaired, ... In estimating such assessment the entire cost of the improvement fronting on the property to be assessed shall be divided by the number of feet fronting or abutting on the same, and the quotient shall be the sum to be assessed per front foot against each lot so fronting or abutting.

[¶ 11] "An owner of land bounded by a road or street is presumed to own to the center of the way, but the contrary may be shown." SDCL 43–16–3; *Aberdeen Cable TV Serv., Inc. v. City of Aberdeen*, 85 S.D. 57, 61, 176 N.W.2d 738, 740 (1970), *cert. denied* 400 U.S. 991, 91 S.Ct. 455, 27 L.Ed.2d 439 (1971) (abutting property owner holds title "subject and subordinate to an easement or servitude in favor of the public"); *State Hwy. Comm'n v. Emry*, 90 S.D. 587, 592, 244 N.W.2d 91, 94 (1976). Pluimer's predecessors in interest were statutorily presumed to have owned the land to the center of Highway 85. Their transfer to Pluimer is statutorily presumed to include the land to the center of the highway. "A transfer of land bounded by a highway passes the title of the person whose estate is transferred to the soil of the highway in front, to the center thereof, *unless a different intent appears from the grant.*" SDCL 43–25–29 (emphasis added). No different intent appears from the deed to Pluimers.

[¶ 12] In fact, no different intent appears from the plat map of Northgate Addition either. The owner of Lots 1 through 6, Block 1 owns to the center line of Highway 85, just as he owns to the center line of Custer Street to the south as owner of Lot 1, Block 1, and to the center line of the unnamed street to the north as the owner of Lot 6, Block 1.

[¶ 13] The City reads these two statutes together to conclude Pluimer's property extends to the middle of Highway 85.[4] The trial court agreed and so do we. The conveyance of property fronting on a street or highway is presumed to carry title to the center of the street or highway "' 'unless the fee in the street is *expressly reserved* in the conveyance.' " *Holida v. Chicago & N.W. Transp. Co.*, 398 N.W.2d 742, 744 (S.D.1986) (emphasis added) (quoting *Sweatman v. Bathrick*, 17 S.D. 138, 159, 95 N.W. 422, 427 (1903)). The deed received by Pluimer does not contain any reservation of a fee in Highway 85. Likewise, as indicated above, the plat of Northgate Addition does not show Lot H–3 as a separate lot.

[¶ 14] Pluimer argues the State owns Lot H–3 in fee. The property was conveyed by "Warranty Deed" to the State. Generally, "a fee simple title is presumed to be intended to pass by a grant of real property *unless it appears from the grant that a lesser estate was intended.*" *Northwest Realty Co. v. Jacobs.*, 273 N.W.2d 141, 144 (S.D.1978) (citing SDCL 43–25–15; 26 CJS *Deeds* § 104c; 23 AmJur2d *Deeds* § 165; 4 Tiffany on Real Property § 978).

[¶ 15] The South Dakota Constitution provides that fee title to land taken for highways remains in the landowners. S.D.Const.Art. VI, § 13. We read this provision in conjunction with the statutory presumption of ownership to the center of the roadway (SDCL 43–16–3) and the statutory presumption including the land to the center of the highway in a transfer (SDCL 43–25–29). The general presumption cited by Pluimer does not apply in this case. Pluimer is statutorily presumed to own the property to the center of the highway. Neither the platting of Northgate

---

**4.** The City also claims the use of the words "over and across" in the deed is significant. In *Northwest Realty Co. v. Jacobs*, 273 N.W.2d 141 (S.D. 1978), this court considered a similar issue. A quitclaim deed contained a clause granting all of the grantor's interest in a strip of property, while the description of the property restricted the grant to an easement for a right-of-way. "Because of the inconsistency of these clauses, it is necessary to use established rules of construction to aid in ascertaining the grantor's intention." *Northwest Realty*, 273 N.W.2d at 144. The *Northwest Realty* court considered seven factors to determine whether the deed conveyed fee simple title or an easement. The court considered that the description of the property was lacking precision, "and is much more indicative of a grant of easement than a fee. The plat of the survey for the irrigation ditch is simply a single line crossing several parcels of property. It does not indicate the width or final location of the proposed ditch." *Id.* at 145.

Lot H–3 indicates the width and location of the proposed highway. The *Northwest Realty* court also considered use of the terms over and across:

> Although use of the terms "over and across," "across," or "over" when used alone in a deed does not imply an easement, when used in conjunction with a restriction of the use as a right-of-way, it is considered to be evidence that an easement was intended.

*Id.* (citations omitted). While the deed to the State is silent as to the issue of easements and rights of way, the plat of Lot H–3 indicates it is for use as a right of way.

Addition nor Pluimer's acquisition of Lots 1 through 6 *after* the recording of the easement would change this rule. Pluimer has not supplied any authority to persuade us otherwise.

[¶ 16] This position is bolstered by the fact that the State does not claim ownership of Lot H–3. Carl Chambers, Right of Way program manager for the Department of Transportation, signed an affidavit which stated in part:

> [I]t is the position of the State Department of Transportation that it *does not own* the Right–of–Way shown on [the] plat *in fee simple absolute*. The sum of money stated in the ... deed was paid by the State for a highway easement across the land in question.

(Emphasis added).

[¶ 17] The language of the State's deed, combined with the language of the owner's certificate on the recorded plat of Lot H–3 indicate the State merely holds an easement for highway purposes. The warranty deed "grants, conveys and warrants" Lot H–3 to the State, but notes Lot H–3 is "shown by" a plat. The plat of Lot H–3 states at the top, "Showing Right of Way to be acquired for highway purposes." The owner's certificate at the bottom of the plat states, "the land ... represented and designated as Lot H–3 ... is hereby intended for and dedicated to the public for a public highway and road, but this dedication shall not be taken to be a grant or donation of the fee of said highway or road as shown on said plat."

[¶ 18] The trial court determined Pluimer is the owner to the center line of the highway. We agree. Pluimer has not overcome the presumption that he owns the land on which the easement platted as Lot H–3 is located. Nothing in the record defeats the obvious intent of the South Dakota Constitution and statutes even when, as here, a deed is used to convey the easement.

[¶ 19] **2. Do Lots 1 through 6 "front and abut" the sidewalk?**

[¶ 20] The sidewalk was constructed on that portion of Pluimer's land which lies within the highway easement area. Because Pluimer owns the property to the center of the highway, his lots front or abut upon the sidewalk constructed by the City. *See* Black's Law Dictionary, 6th Ed. 1990 ("fronting and abutting ... As used in statutes relating to assessment for improvements, property between which and the improvement there is no intervening land.") Therefore, these lots were subject to assessment for the construction of the sidewalk. SDCL 9–46–5.

[¶ 21] Affirmed.

[¶ 22] AMUNDSON and KONENKAMP, JJ., concur.

[¶ 23] MILLER, C.J., and GILBERTSON, J., dissent.

#19288

NORTHGATE ADDITION

IN THE
NE¼SE¼ SE¼SE¼ SW¼SE.
SEC. 3, T8N, R2E BHM

The easements for the highway and streets are shaded to the center line of the highway and streets

MILLER, Chief Justice, dissenting.

[¶ 24] I respectfully dissent.

[¶ 25] It is axiomatic that summary judgment is only appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. SDCL 15–6–56(c); *Sparagon v. Native American Publishers, Inc.*, 1996 SD 3, 542 N.W.2d 125, 133 (citing *First Western Bank v. Livestock Yards*, 444 N.W.2d 387 (S.D.1989); *Caneva v. Miners and Merchants Bank*, 335 N.W.2d 339 (S.D.1983)). Because I believe there are unresolved issues of material fact, I cannot agree with the majority's conclusion that summary judgment for City was appropriate. The key issue is whether Pluimer has an ownership interest in all or relevant parts of Lot H–3. Without clear, undisputed evidence demonstrating Pluimer's ownership interest in Lot H–3, summary judgment for City was unjustified.

[¶ 26] Indeed, the recorded plat maps of the disputed property seem to suggest that Pluimer *does not* own Lot H–3. On the plat map of Northgate Addition, Lots 1 through 6 are clearly marked, symmetrical rectangles. According to this map, these discreet lots are separated from the highway by a strip of land 100 feet wide. The neighboring streets and lots depicted in this map and in the plat of Lot H–3 also suggest that a 100–foot strip of land separates Pluimer's six lots from the center line of the highway. Even if we assumed this 100–foot measurement included the entire width of the highway, there may still be a 36–foot–wide strip of land that divides Pluimer's property from the highway. Arguably, Pluimer's claim that his property does not front or abut the highway is correct.

[¶ 27] Although I believe summary judgment was improvidently granted to City, I am not anxious to jump into the trial court's shoes and order summary judgment for Pluimer. I cannot declare, as the other dissenting author does, that no factual dispute remains and summary judgment for Pluimer is absolutely correct. In my view, a genuine issue of material fact exists as to whether Pluimer's Lots 1 through 6 include all or part of Lot H–3 or whether Lot H–3 was separately deeded to Pluimer. Now that the pertinent issue is more sharply defined, the parties should have the opportunity to present any additional evidence which may clarify the boundaries and ownership of Lot H–3 and the Northgate Addition lots. I would reverse the grant of summary judgment and remand for further consideration by the trial court.

GILBERTSON, Justice, dissenting.

[¶ 28] I respectfully dissent. The facts of this case are not in dispute. On August 2, 1957, Lot H–3 was conveyed by warranty deed from Harry, Clifford, Lloyd and Doris Gay and Patricia Frank (hereinafter "grantors") to the State for "highway purposes." Although a warranty deed is generally assumed to transfer fee title, in reality all that it states is that the grantor warrants the title whatever the nature of the estate he or she is transferring to the grantee. *Cuka v. State*, 80 S.D. 232, 122 N.W.2d 83 (S.D.1963). The plat attached to the deed clearly states the transfer is for a "right-of-way to be acquired for highway purposes."

[¶ 29] Right-of-way for a controlled access facility may be acquired "in the same manner as such units are now ... authorized by law...." SDCL 31–8–7. That authority is granted by SDCL 31–19–1 which authorizes acquisition of right-of-way by gift, purchase or condemnation. When land is acquired for highway purposes, "an easement was all the state could acquire regardless of the form of the instrument of conveyance." *Cuka*, 122 N.W.2d at 85. Thus at this point the State held an easement for highway purposes and the remainder interest remained in the grantors.

[¶ 30] In September of 1974, Pluimer purchased Lots 1 and 2 of Block 1 of Northgate Addition from a third party who had acquired them from the grantors. Lots 1 and 2 are adjacent to Lot H–3. No mention was made of Lot H–3 in this transfer to Pluimer. He later acquired Lots 3–6 from the grantors. There is nothing in the record to indicate the conveyance of Lots 1–6 to Pluimer contained any rights to the adjacent Lot H–3.

[¶ 31] As the State holds only an easement on Lot H–3, the question becomes who owns the reversionary interest. For Pluimer to be responsible for the sidewalk assessment, under SDCL 9–46–5, he must be the owner of the reversionary interest of Lot H–3 as his Lots 1–6 do not front or abut "upon the sidewalk."

[¶ 32] The majority relies upon SDCL 43–16–3 which creates a presumption that the owner of land "bounded by a road" is presumed to own to the center of the highway, "but the contrary may be shown." Likewise SDCL 43–25–29 provides "[a] transfer of land bounded by a highway passes the title of the person whose estate is transferred to the soil of the highway in front, to the center thereof, unless a different intent appears from the grant." Here the presumptions of these statutes have been clearly overcome.

[¶ 33] The majority correctly notes that the west half of Lot H–3 consists of 68 feet of undeveloped right-of-way outside of the constructed highway of 32 feet for a total of 100 feet. Originally Lot H–3 consisted of 100 feet from its center line to its west boundary line. The subsequent plat of Northgate Addition could not alter the plat of Lot H–3 by overlapping unless Lot H–3 was partially vacated pursuant to SDCL 11–3–20. There is no record that such a partial vacation was ever done* so Lot H–3 and Northgate Addition abut each other rather than overlap.

[¶ 34] SDCL 43–16–3 speaks of land "bounded by a road or street" and SDCL 43–25–29 speaks of land "bounded by a highway." Here the highway is not "bounded" by Lots 1 through 6, it is "bounded" by the 66 feet of Lot H–3 which is not used for the highway.

[¶ 35] There is no conveyance of the reversionary interest or underlying fee in Lot H–3 from Harry, Clifford, Lloyd and Doris Gay and Patricia Frank to anybody. Presumption statutes cannot be used to wrestle the underlying title to this lot away from them. Art. VI, Section 13 of our State Constitution will not allow an involuntary taking unless the taking is for a public use. Here there is no record of any attempt to acquire this underlying fee either by the State or more importantly, by Pluimer. All the evidence points to a contrary conclusion.

[¶ 36] Thus there is no question of fact as to the ownership of the underlying fee of Lot H–3 based on the state of the record now before us. It still rests with the original grantors.

[¶ 37] I would reverse and remand with instructions to enter declaratory relief upon behalf of Pluimer.

---

* Partial vacation of the plat of Lot H–3 at the time of the filing of the plat of the Northgate Addition required as the exclusive procedure for such a partial vacation of a plat (SDCL 11–3–20), that a legal proceeding be instituted in circuit court (SDCL 11–3–21), that due and proper notice be served on all known interested parties (SDCL 11–3–23), and that if the circuit ordered a partial vacation (SDCL 11–3–24), such order had to be recorded with the register of deeds. The record is empty of any of these steps being taken. Only under such conditions could there be a replatting which could have brought Lots 1–6 of the Northgate Addition to be "bounded by the highway" (SDCL 11–3–26). SDCL 11–3–21 through 25 were repealed in 1988 and a new procedure for vacation of plats was instituted.