Richard C. **FLUGGE**, Plaintiff and Appellant,

v.

Steven C. **WAGNER**, Defendant and Appellee.

No. 18911.

Supreme Court of South Dakota.

Considered on Briefs March 20, 1995.

Decided May 31, 1995.

Charles L. Dorothy, Sioux Falls, for plaintiff and appellant.

Gale E. Fisher, Sioux Falls, for defendant and appellee.

SABERS, Justice.

A dispute arose between two certified public accountants concerning their employment

relationship and the handling of each other's clients. Flugge sued Wagner for breach of contract and libel for written statements made by Wagner to the South Dakota Board of Accountancy (Board). Wagner counterclaimed for libel based on Flugge's complaint to the Board. The trial court granted summary judgment on both libel suits because all statements were privileged. Flugge appeals. We affirm.

### FACTS

Richard Flugge (Flugge) hired Steven Wagner (Wagner), under an employment agreement dated February 1, 1992. The agreement's non-compete clause provided that upon termination of Wagner's employment, Wagner would not provide accounting services to Flugge's clients for two years. The agreement provided damages for breach, but exempted Wagner's prior clients.

On April 11, 1992, Flugge notified Wagner of termination of his employment. Wagner's last day at work was April 17, 1992. On April 24, 1992, Flugge sued Wagner for breach of the agreement and to force him to return certain client files. Wagner produced the files and entered into negotiations with Flugge. On May 7, 1992, they entered into a stipulation and release which settled amounts owed up to May 7, 1992. The stipulation noted that the agreement's non-compete clause would remain in effect.

On May 14, 1992, Flugge filed a complaint with the Board regarding Wagner's taking some client files. On June 3, 1992, Flugge learned that Wagner advised Terry Keller, a Flugge client, about the procedure to re-file an income tax return. Wagner claims he did so "informally and as a friend" and did not request compensation for this advice. In a letter to Wagner, Flugge demanded payment of damages based on claimed violations of the non-compete agreement.

On June 6, 1992, Wagner responded in a letter to Flugge, with a copy to the Board, regarding the commission Flugge should have received on Keller and Flugge's alleged improper billing on another Flugge client. Flugge claims that the accusations contained in this June 6 letter were "false and libelous." Several letters followed regarding Wagner's advising Flugge clients and amounts claimed according to the non-compete agreement.

Flugge sued for libel, punitive damages, and breach of contract. Wagner made an offer of judgment of $703.75 on the breach of contract claim under SDCL 15–6–68. Flugge accepted.

Wagner answered the complaint on libel and punitive damages and counterclaimed for libel based on the complaint Flugge filed with the Board. Flugge asserted two affirmative defenses: (1) truth and (2) privilege under SDCL 20–11–5. Flugge moved for summary judgment on Wagner's counterclaim. Wagner moved for summary judgment on Flugge's claims for libel and punitive damages. Flugge moved to amend his complaint based on a recently discovered Wagner letter to the Board, which letter was produced during discovery. This letter concerned Flugge and Wagner's working relationship and Flugge's treatment of another employee. According to Wagner, the letter explained his failure to return to the office with the missing files. Flugge claims the letter is libelous. Wagner made a motion to replace his libel claim with a claim of intentional infliction of emotional distress.

The trial court entered judgment against Wagner on the breach of contract claim. The court also granted both motions for summary judgment on the libel claims based on absolute privilege for statements made to the Board. Flugge appeals.

The standard of review on a motion for summary judgment is "whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law." *Farmers & Merchants State Bank v. Teveldal,* 524 N.W.2d 874, 876 (S.D.1994). "The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party." *Id.* Absolute privilege is a question of law. *Franklin v. Blank,* 525 P.2d 945, 946 (N.M.Ct.App.1974).

**Whether Wagner's statements to the Board are protected by an absolute priv-**

ilege making him immune from liability for their publication?

SDCL 20–11–3 provides:

> Libel is a false and *unprivileged* publication by writing, printing, picture, effigy, or other fixed representation to the eye which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation.

*Id.* (emphasis added).

SDCL 20–11–5 provides:

> A privileged communication is one made:
>
> .    .    .    .    .
>
> 2) In any legislative or judicial proceeding, or in *any other official proceeding authorized by law;*
>
> 3) In a communication, without malice, to a person interested therein, by one who is also interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information;
>
> 4) By a fair and true report, without malice, of a judicial, legislative, or other public official proceeding or of anything said in the course thereof.
>
> In the cases provided for in subdivisions (3) and (4) of this section, malice is not inferred from the communication or publication.

*Id.* (emphasis added).

■ A privileged communication under SDCL 20–11–5(2) is "absolute and remain[s] privileged whether made with or without malice." *Peterson v. City of Mitchell,* 499 N.W.2d 911, 915 (S.D.1993). "The defense of absolute privilege or immunity under the law of defamation avoids all liability." *Waln v. Putnam,* 86 S.D. 385, 393, 196 N.W.2d 579, 583 (1972). An absolute privilege applies whether the statement is false or not. *Id.* Communications under SDCL 20–11–5(3) and (4) are " 'qualified' because the communication is only 'privileged' if it is made, 'without malice.' " *Peterson,* 499 N.W.2d at 915 (citation omitted).

■ We must determine if the Board's investigation constitutes "any other official proceeding authorized by law" in order to qualify for absolute privilege under SDCL 20–11–5(2). An "official proceeding" is "that which resembles judicial and legislative proceedings, such as transactions of administrative boards and quasi-judicial and quasi-legislative proceedings[.]" *Waln,* 196 N.W.2d at 583 (citation omitted).

Flugge claims that the statements should not be absolutely privileged because no "official proceeding authorized by law" occurred. In *Ramstead v. Morgan,* 219 Or. 383, 347 P.2d 594, 599 (1959), the court held that a complaint written to a county grievance committee of the state bar was protected by an absolute privilege. Even though no formal hearing was conducted, the absolute privilege attached to statements in a complaint made to initiate quasi-judicial proceedings. *Id.; Sinnett v. Albert,* 188 Neb. 176, 195 N.W.2d 506, 508 (1972); *see* Wendy Evans Lehmann, *Testimony before or Communications to Private Professional Society's Judicial Commission, Ethics Committee, or the like, as Privileged,* 9 A.L.R.4th 807, 817–820 (1981) (complaints written to state bar ethics committees or the like constitute statements made during official proceedings).

In *Franklin,* 525 P.2d at 947, the court upheld the trial court's grant of summary judgment for defamation. A doctor sent a complaint, a defamatory letter, to an ad hoc committee of doctors designed to investigate claims of incompetence and unethical behavior.

> The policy reasons for according [absolute] privilege to quasi-judicial proceedings involving peer review of alleged professional misconduct are at least equally compelling. The appropriate professional societies, by exercising peer review, can and do perform a great public service by exercising control over those persons placed in a position of public trust but nevertheless unfit to bear that responsibility. It is hardly open to dispute that communications initiating such proceedings are an indispensable part thereof and are to be protected by the privilege.

*Id.* at 946 (citations omitted) (Absolute immunity for statements for peer review proceedings was abrogated by New Mexico statute, *see Leyba v. Renger,* 114 N.M. 686, 687–89, 845 P.2d 780, 781–83 (1992); the common law policy reasons advocating absolute immunity remain).

In *Lambdin Funeral Service, Inc. v. Griffith,* 559 S.W.2d 791, 792 (1978), an action for libel was based on charges contained in a complaint filed with the Tennessee Board of Funeral Directors and Embalmers. The court applied the absolute privilege to "boards or commissions that are clothed with the authority to revoke a license[.]" *Id.* A "judicial proceeding" included proceedings before boards and commissions performing judicial or quasi-judicial functions. *Id.; see Blote v. First Federal Savings and Loan Association of Rapid City,* 422 N.W.2d 834, 838 (S.D.1988) (an unemployment compensation hearing is an "official proceeding" under SDCL 20–11–5(2)).

■ Statements made to state bar associations in connection with peer review have generally been accorded an absolute privilege. Lehmann, *supra,* at 817–820. In *Sinnett,* 195 N.W.2d at 509, the court held that there is an absolute privilege for sending a written complaint to the Nebraska State Bar Association regarding the alleged misconduct of an attorney. The court noted that a complainant should not be discouraged by the fear that he may have to defend a lawsuit for defamation in statements made to the Bar. *Id.* Therefore, we conclude that statements made to the Board in this quasi-judicial proceeding are part of an "official proceeding" under SDCL 20–11–5(2).

■ Flugge claims even if an "official proceeding" occurred, the statements made by Wagner did not have "some connection or logical relation to the action" and were not made "to achieve legitimate objectives" of the proceedings. In *Janklow v. Keller,* 90 S.D. 322, 331, 241 N.W.2d 364, 368 (1976), we held that SDCL 20–11–5(2) provides an absolute privilege for attorneys if:

1) [Communication] was made in a judicial proceeding;

2) had *some connection or logical relation* to the action;

3) was made to achieve the objects of the litigation; and

4) involved litigants or other participants authorized by law.

*Id.* (citation omitted) (emphasis added).

The question of some connection or logical relation to the proceedings is one of law. 50 Am.Jur.2d, *Libel and Slander,* § 303. "[T]he relevancy of the defamatory matter is not a technical legal relevancy but instead a general frame of reference and relationship to the subject matter of the action." *Sinnett,* 195 N.W.2d at 508 (citation omitted). Courts have favored a liberal rule that statements are related to the proceedings, thereby retaining the absolute privilege. 50 Am.Jur.2d, *Libel and Slander,* § 303. Doubts are resolved in favor of relevancy and pertinency. *Id.* Wagner's responses to the Board's inquiry relate to his taking of client files and his reasons for not noticing the error. His responses to the Board also give reasons for failure to return to the office and the possible explanation for his termination. These matters are relevant to the proceedings. Therefore, the statements were related to an official proceeding and are afforded an absolute privilege.

We affirm.

MILLER, C.J., and AMUNDSON and KONENKAMP, JJ., concur.

GILBERTSON, J., not having been a member of the court at the time this case was considered, did not participate.