2004 SD 109

**Sally PAWLOVICH, Plaintiff and Appellant,**

v.

**Donna LINKE, Defendant and Appellee.**

**Nos. 23024, 23033.**

Supreme Court of South Dakota.

Considered on Briefs June 1, 2004.

Decided Oct. 6, 2004.

---

12.  Disanto's other issues have no merit.

---

Stephanie E. Pochop of Johnson, Eklund, Nicholson & Peterson, Gregory, South Dakota, Attorneys for plaintiff and appellant.

Melanie Carpenter of Woods, Fuller, Shultz & Smith, Sioux Falls, South Dakota, Attorneys for defendant and appellee.

FLEMMER, Circuit Judge.

[¶ 1.] Sally Pawlovich (Pawlovich) appeals the trial court's grant of summary judgment holding that Donna Linke (Linke) was protected by the official proceedings privilege in this defamation action. Linke has also filed a notice of review contending the alleged defamatory statement was protected by the common interest privilege. We reverse and remand.

## FACTS

[¶ 2.] Pawlovich is a registered nurse and worked in that capacity for the Huron Regional Medical Center (HRMC) in May 2001. Linke had formerly been a nurse at HRMC and was acquainted with Pawlovich. Linke's mother was also a nurse at HRMC and was acquainted with Pawlovich. Linke's sister, T.B., was admitted to HRMC in May 2001 and provided nursing assistance by Pawlovich during at least part of her hospital stay. Pawlovich was aware of the familial relations between the three women.

[¶ 3.] On May 11, 2001, Linke visited T.B. at HRMC. During this visit Linke and Pawlovich spoke. It is the contents of this communication that brought about this defamation suit. Linke's version of the conversation was that she asked Pawlovich how T.B. was doing. She expected a general reply but, instead, the response provided by Pawlovich was that T.B.'s test results showed a gonococcal colonization. Pawlovich also indicated that T.B. did not understand the implications of this sexually transmitted disease. Although T.B. had informed her mother of the diagnosis she asked her not to share it with anyone, including Linke. Linke alleged that before her conversation with Pawlovich she had no knowledge of T.B.'s condition but instead only knew that T.B. had surgery and suffered some type of infection. Pawlovich denies ever having made these statements.

[¶ 4.] Linke subsequently indicated to her mother that Pawlovich informed her that T.B. had been diagnosed with gonorrhea. Her mother conveyed this to T.B. who became upset by the perceived breach of patient confidentiality. Thereafter, T.B. reported this disclosure to Karen Feterl, a hospital administrator and Pawlovich's supervisor. Feterl informed Carolyn Stahl, HRMC's Director of Human Services about the alleged breach of patient confidentiality. HRMC's policy required employees to keep patient information confidential and the penalty for such a violation could include termination.

[¶ 5.] Feterl and Stahl conducted an investigation into the validity of the claim made by T.B. The investigation included talking with Pawlovich, Linke and employees working in the area at the time of the alleged disclosure. Linke also provided a written statement detailing her account of the conversation with Pawlovich. Following their investigation, Feterl and Stahl

concluded that Pawlovich had violated patient confidentiality and Pawlovich's employment was terminated.

[¶ 6.] Pawlovich filed this suit against Linke alleging defamation. After the conclusion of the discovery process Linke moved for summary judgment. The trial court, relying upon SDCL 20–11–5(2) (the official proceedings privilege), granted Linke's motion for summary judgment. Pawlovich appeals. The parties have raised the following issues for review:

> Whether the statements made by Linke to the hospital personnel during their investigation were privileged under SDCL 20–11–5(2), the official proceedings privilege.

> Whether the statements were privileged under SDCL 20–11–5(3), the common interest privilege.

## STANDARD OF REVIEW

[¶ 7.] This Court's standard of review for the grant or denial of summary judgment by a trial court is well-established:

> Summary judgment is authorized if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. SDCL 15–6–56(c). We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. *Bego v. Gordon*, 407 N.W.2d 801, 804 (S.D.1987). All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party. *Morgan v. Baldwin*, 450 N.W.2d 783, 785 (S.D.1990). The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. *Wilson v.*

*Great N. Ry. Co.*, 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968). Summary judgment will be affirmed if there exists *any* basis which would support the trial court's ruling. *Wolff v. SD Game, Fish and Parks Dept.*, 1996 SD 23, ¶ 32, 544 N.W.2d 531, 537 (citing *St. Paul Fire & Marine Ins. Co. v. Schilling*, 520 N.W.2d 884, 886 (S.D.1994)) (emphasis added).

*Cleveland v. BDL Enterprises, Inc.*, 2003 SD 54, ¶ 11, 663 N.W.2d 212, 216–217.

## ANALYSIS

[¶ 8.] In reviewing the trial court's grant of summary judgment in a defamation action we are guided by certain established principles concerning this area of the law. Defamation may be either libel or slander. SDCL 20–11–2. However, both are statutorily defined as an "unprivileged" communication. SDCL 20–11–3; SDCL 20–11–4. Therefore, a defamation action may not survive if the alleged defamatory communication was privileged. *Peterson v. City of Mitchell*, 499 N.W.2d 911, 915 (S.D.1993) (citing SDCL 20–11–5). In reaching this determination, "[t]he existence of privilege is a question for the Court and therefore is freely reviewable." *Sparagon v. Native American Publishers, Inc.*, 1996 SD 3, ¶ 26, 542 N.W.2d 125, 132.

[¶ 9.] Furthermore, there are two types of privileges contained in SDCL 20–11–5: absolute and conditional. *See Flugge v. Wagner*, 532 N.W.2d 419, 421 (S.D.1995). This statute provides:

> A privileged communication is one made:

> (1) In the proper discharge of an official duty;

> (2) In any legislative or judicial proceeding, or in any other official proceeding authorized by law;

> (3) In a communication, without malice, to a person interested therein, by

one who is also interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information;

(4) By a fair and true report, without malice, of a judicial, legislative, or other public official proceeding or of anything said in the course thereof.

In the cases provided for in subdivisions (3) and (4) of this section, malice is not inferred from the communication or publication.

SDCL 20–11–5. Subsections (1) and (2) provide for an absolute privilege whether or not the statement is false and regardless of malice. *Setliff v. Akins*, 2000 SD 124, ¶ 44, 616 N.W.2d 878, 891. Subsections (3) and (4) provide for a conditional privilege and is "'qualified' because the communication is only 'privileged' if it is made 'without malice.'" *Flugge*, 532 N.W.2d at 421 (quoting *Peterson*, 499 N.W.2d at 915). With these principles in mind, we turn to the arguments of the parties.

### ISSUE ONE

[¶ 10.] **Whether the statements made by Linke to the hospital personnel during their investigation were privileged under SDCL 20–11–5(2), the official proceedings privilege.**

[¶ 11.] SDCL 20–11–5(2) provides that "[a] privileged communication is one made ... [i]n any legislative or judicial proceeding, or in any other official proceeding authorized by law." This Court has summarized the effect of SDCL 20–11–5(2):

A privileged communication under SDCL 20–11–5(2) is 'absolute and remain[s] privileged whether made with or

without malice.' *Peterson*, 499 N.W.2d at 915. 'The defense of absolute privilege or immunity under the law of defamation avoids all liability.' *Waln v. Putnam*, 86 S.D. 385, 393, 196 N.W.2d 579, 583 (1972). An absolute privilege applies whether the statement is false or not. *Id.*

*Flugge*, 532 N.W.2d at 421. For purposes of reviewing the trial court's grant of summary judgment concerning the applicability of this privilege we review the facts in favor of the non-moving party, Pawlovich. Pawlovich maintains that she did not make any statements disclosing T.B.'s condition to Linke. However, the privilege contained in SDCL 20–11–5(2) operates to shield all liability when a false statement is made in an official proceeding, therefore, resolution of the truth or falsity of Linke's statement to HRMC is not determinative under the official proceedings privilege.

[¶ 12.] In determining the applicability of the official proceedings privilege to these facts we note that the investigation by Feterl and Stahl was neither a legislative nor a judicial proceeding. Rather, we must focus solely on the language contained in the second half of SDCL 20–11–5(2) to determine the applicability of this privilege here: "any other official proceeding authorized by law." This Court has determined that "[a]n 'official proceeding' is 'that which resembles judicial and legislative proceedings, such as transactions of administrative boards and quasi-judicial and quasi-legislative proceedings.'" *Flugge*, 532 N.W.2d at 421 (quoting *Waln*, 86 S.D. at 393, 196 N.W.2d at 583); *see also Blote v. First Federal Sav. & Loan Ass'n of Rapid City*, 422 N.W.2d 834, 838 (S.D.1988) (holding an administrative hearing is an "official proceeding" for purposes of SDCL 20–11–5(2)). In *Waln*, this Court recognized limitations on the type of pro-

ceeding for which the privilege contained in SDCL 20–11–5(2) would apply.

> Surely it was not the legislative intent to grant an absolute privilege for every defamatory utterance made in every lawful meeting. We are persuaded that the 'official proceeding' embraced in the purview of the statute is that which resembles judicial and legislative proceedings, such as transactions of administrative boards and quasi-judicial and quasi-legislative proceedings, not a meeting of a board of directors of a nonprofit corporation or the like.

*Waln*, 86 S.D. at 394, 196 N.W.2d at 583 (quoting *McMann v. Wadler*, 189 Cal. App.2d 124, 11 Cal.Rptr. 37, 41 (1961)).

[¶ 13.] The trial court relied upon *Flugge* in holding that the official proceeding privilege applied in this situation. Yet, *Flugge* is distinguishable from the case at bar. The alleged defamatory communication in *Flugge* was made to the South Dakota Board of Accountancy; whereas, the defamatory statement alleged by Pawlovich was made to her immediate supervisor and HRMC's director of human services. *See Flugge*, 532 N.W.2d at 420.

[¶ 14.] It is significant that the investigation concerning the alleged disclosure was handled by Feterl and Stahl and was not a peer review hearing. We have recognized the important role played by doctors, attorneys and other professionals in reviewing members of their respective profession. *See id.* at 421–22 (citations omitted). Professional societies, through peer review, can and do perform a great public service by exercising control over those persons placed in a position of public trust. It is beyond dispute that communications initiated during such proceedings are an indispensable part thereof. *Id.* However, in this situation the complaint was not made to a body charged with the profes-

sional licensing of nurses, nor even an HRMC disciplinary board.

[¶ 15.] Comparatively, it is important to note that our precedent, namely *Flugge* and *Blote*, has only applied this privilege in quasi-judicial or administrative contexts. In both of those cases the board to which a statement was made was vested, either directly or indirectly, with oversight authority by the legislature. For example, SDCL 36–20B–1 provided authority for the Board of Accountancy whose proceedings were recognized as official in *Flugge.* SDCL 61–2–10 provided for the creation of a division of unemployment compensation within the Department of Labor, the forum in which *Blote* applied the privilege. On the other hand, the Stock Grower's Association at issue in *Waln*, although presumably an entity created within the laws of the State of South Dakota, was not vested with such authority by the legislature. While it could conduct official meetings according to its bylaws, such meetings were neither an administrative nor a quasi-judicial proceeding as contemplated by SDCL 20–11–5(2). As a result, the Court in *Waln* precluded application of the official proceedings privilege to such proceedings. *Waln*, 86 S.D. at 394, 196 N.W.2d at 583.

[¶ 16.] Nevertheless, Linke argues that the public policy behind the official proceedings privilege requires its application in this context. The justifications advanced for the position mirror those used for quasi-judicial peer review of those placed in a position of public trust. We agree that public policy justifies an absolute privilege in the context of official quasi-judicial proceedings as well as statutorily authorized professional peer review, however, we decline to extend that privilege to all employment relationships. Although we recognize the position of trust held by a registered nurse, an absolute

privilege under 20–11–5(2) is not available outside an official proceeding authorized by law. Therefore, the trial court's grant of summary judgment on this issue is reversed.

### ISSUE TWO

[¶ 17.] **Whether the statements were privileged under SDCL 20–11–5(3), the common interest privilege.**

[¶ 18.] The trial court did not reach the question of whether the common interest privilege applied because it granted summary judgment based upon the official proceedings privilege, a holding we reject under Issue One. However, this does not necessarily preclude our consideration of the applicability of this privilege to these facts. This is because, "[s]ummary judgment will be affirmed if there exists *any* basis which would support the trial court's ruling." *St. Paul Fire & Marine, Ins. Co.*, 520 N.W.2d at 886. (emphasis added). This Court has also recognized that for reasons of judicial economy "where a judgment is correct, it will not be reversed even though it is based on erroneous conclusions or wrong reasons." *Wolff,* 1996 SD 23, ¶ 32, 544 N.W.2d at 537 (citing *Sommervold v. Grevlos,* 518 N.W.2d 733, 740 (S.D.1994); *Kirby v. Western Surety Co.,* 70 S.D. 483, 488, 19 N.W.2d 12, 14 (1945)). Therefore, we will examine the applicability of the common interest privilege as raised by the notice of review.

[¶ 19.] SDCL 20–11–5(3) contains the common interest privilege. It states:

A privileged communication is one made ... [i]n a communication, without malice, to a person interested therein, by one who is also interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information.

SDCL 20–11–5(3). "[T]he common interest privilege applies where 'persons having a common interest in a particular matter correctly or reasonably believe that there is information that another sharing the common interest is entitled to know.' " *Setliff,* 2000 SD 124, ¶ 46, 616 N.W.2d at 891 (citing *Tibke v. McDougall,* 479 N.W.2d 898, 905 (S.D.1992)).

[¶ 20.] It is difficult to dispute that a common interest was present in this case. The patient has obvious interests in maintaining the confidentiality of her health information. If nurses are violating hospital policy and giving out patients' confidential information HRMC would likewise be interested in those matters. In fact, counsel for Pawlovich conceded in her argument before the trial court that "there probably is a common interest if the conversation occurred." As a result, we hold that the common interest privilege applies in this situation, and, therefore, next address the question of malice.

[¶ 21.] "This Court has long held that the plaintiff has the burden of proving actual malice that destroys the privilege." *Kieser v. Southeast Properties,* 1997 SD 87, ¶ 15, 566 N.W.2d 833, 838 (citations omitted).

[A] specific showing of malice is required for purposes of raising a genuine issue of a material fact.... Because malice cannot be presumed, the party bearing the burden of proof must establish that there was a reckless disregard for the truth on the part of the accused. 'The real test of whether a defendant's conduct is reckless so as to constitute actual malice is whether he 'in fact entertained serious doubts as to the truth of his publications.'

*Id.* ¶20 (quoting *Tibke,* 479 N.W.2d at 905–6).

[¶22.] On this record, we cannot affirm summary judgment based upon the common interest privilege because there exists a genuine issue of material fact concerning malice. Whether or not Pawlovich actually disclosed T.B.'s confidential information to Linke is disputed. If the facts are taken as alleged by the non-moving party, Pawlovich, Linke lied to HRMC in her report of the alleged disclosure of information. As per her pleadings, Pawlovich did not disclose any confidential information and Linke therefore knew her statements to be false when she published them to HRMC. Knowingly giving false statements to Pawlovich's supervisor with the knowledge that the alleged conduct could result in termination or other discipline would clearly amount to malice. Pawlovich has adequately raised the question of malice and it presents a question for the factfinder and not this Court.

[¶23.] We therefore reverse and remand to the trial court for proceedings consistent with this opinion.

[¶24.] GILBERTSON, Chief Justice, and KONENKAMP and MEIERHENRY, Justices, concur.

[¶25.] ZINTER, Justice, concurs with writing.

[¶26.] FLEMMER, Circuit Judge, for SABERS, Justice, disqualified.

ZINTER, Justice, (concurring).

[¶27.] I concur and write only to point out that we have only addressed the alleged defamatory statements made to HRMC employees in their investigation. We have not addressed an alleged defamatory statement Linke made to her mother and a statement she may have made to T.B. There is a dispute whether those statements, if actionable, were pleaded and preserved. There is also a dispute whether the trial court considered them. Because the trial court's memorandum decision does not reflect that it ruled on the privileged status of these additional statements, we have not considered them in this appeal.