# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1372

_____

John Brand; Daniel Juhl; John Mitola; Jeff Bendel

*Plaintiffs - Appellants*

v.

National Union Fire Insurance Company of Pittsburgh, PA

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: March 14, 2019
Filed: August 16, 2019

_____

Before SHEPHERD, ERICKSON, and KOBES, Circuit Judges.

_____

ERICKSON, Circuit Judge.

John Brand, Daniel Juhl, John Mitola, and Jeff Bendel (collectively, "Insured Directors"), plaintiffs in this declaratory judgment action seeking to allocate defense costs among insured and uninsured parties, appeal the district court's[1] adverse grant

_____

[1]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota.

of summary judgment in favor of defendant-appellee National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union"). The Insured Directors contend that the district court erred in two particulars: first, in holding that they failed to meet their burden to show that National Union's allocation was improper, and, second, in failing to conform the pleadings to the facts. We affirm.

## I.     Background

The Insured Directors are executives of Juhl Energy, Inc., a Minnesota-based energy company. National Union wrote a Directors and Officers ("D & O") insurance policy covering Juhl Energy's directors and officers for the coverage period of June 24, 2013, to July 1, 2014. The policy provides personal liability coverage for the directors and officers of Juhl Energy and its subsidiaries for up to $3 million, with a $100,000 deductible.

Juhl Energy's subsidiary, Juhl Energy Development, Inc. ("JEDI"), contracted with Unison Co. Ltd. ("Unison"), a South Korean wind turbine manufacturer, to purchase two wind turbine generators for a community wind farm developed and owned by Winona County Wind, LLC ("WCW"). JEDI secured a financing loan from Unison for this purchase in the amount of $2,574,900. At the time the turbines were purchased, WCW was a subsidiary of the Winona County Economic Development Authority, however, JEDI purchased WCW after executing the contract with Unison. Following this purchase, Unison sued JEDI in the District of Minnesota, claiming that JEDI's acquisition of WCW was in breach of the financing agreement. An amended complaint was filed in December 2013, alleging 17 separate causes of action. The Insured Directors were named as defendants in three of these claims; the remaining 14 counts were asserted against various non-insured entities, many of which included Juhl Energy and its subsidiary companies.

In January 2014, the Insured Directors filed a motion seeking to compel arbitration. The district court denied their motion, and the Insured Directors appealed. While the appeal was pending in this court, non-insureds JEDI and WCW commenced arbitration against Unison, alleging breach of contractual warranties by selling JEDI defective turbines. JEDI claimed that the turbines worked only sporadically, and design defects (caused by Unison's failure to account for Minnesota's cold climate) rendered the turbines useless during winter months. In May 2015, this court reversed the district court's denial of the Insured Directors' motion to compel arbitration. Unison Co. v. Juhl Energy Dev., Inc., 789 F.3d 816 (8th Cir. 2015). On remand, the district court stayed Unison's suit until arbitration was completed. On October 23, 2015, Unison asserted the 17 claims as counterclaims in the arbitration, plus one additional claim against JEDI for legal fees and expenses.

Upon notice of the Unison lawsuit, National Union (via claims analyst, AIG Claims, Inc.) sent a letter to Brand stating that potential coverage was available but only for the Insured Directors. National Union subsequently sent Brand an email proposing the coverage allocation to be 20%, basing its estimate on the percentage of covered claims in the suit. National Union also informed Brand that there was no coverage for JEDI/WCW's arbitration claims against Unison and requested that the law firm representing these parties bill separately for them. In a separate email, National Union notified Stuart Turner, broker for the insured parties, that JEDI/WCW's prosecution of affirmative claims against Unison were not defense costs under the policy and therefore would not be covered. Turner responded that the Insured Directors strongly disagreed with AIG's 20% allocation, asserting that the affirmative arbitration claims were "inextricably intertwined" with the federal lawsuit against the directors and "necessary to the defense of the litigation as a strategic matter" because JEDI's breach of warranty claims constituted its principal defense to Unison's claims in the federal lawsuit. JEDI claimed that under these facts the arbitration was defensive in nature.

National Union disagreed with this analysis and took the position that 40% of the expenses and costs of the federal lawsuit was an appropriate allocation, because the Insured Directors constituted four out of the ten defendants. National Union declined to reimburse any fees associated with the arbitration prior to October 23, 2015, when Unison filed its counterclaim. National Union offered to allocate 10% of the arbitration fees and costs incurred after that date because the arbitration primarily involved JEDI/WCW's product defect/warranty claims against Unison, and only three of the 18 claims involved the Insured Directors. The Insured Directors rejected this proposal.

When the parties were unable to reach agreement, the Insured Directors sued National Union in Minnesota district court, seeking a declaratory judgment declaring that the Insured Directors were entitled to an allocation of 100% of the fees, costs, disbursements, and expenses incurred by the Insured Directors in both the district court action and the arbitration. Additionally, the Insured Directors requested that National Union reimburse the costs of JEDI/WCW's arbitration against Unison, asserting that it was defensive in nature. Both parties moved for summary judgment, and the district court granted summary judgment for National Union. The Insured Directors filed this appeal.

## II.    Discussion

### A.    Summary Judgment

"We review the district court's grant of summary judgment de novo, reading the record in a light most favorable to the non-moving party and granting all reasonable inferences in his favor." Hannoon v. Fawn Eng'g Corp., 324 F.3d 1041, 1045-46 (8th Cir. 2003) (citation omitted). Summary judgment is proper when the record before the district court establishes that there is "no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Courts must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. See Young v. United Parcel Serv., Inc., 135 S. Ct. 1338, 1347 (2015) (citation omitted).

Under Minnesota law, "[t]he interpretation of an insurance policy, including the question of whether a legal duty to defend or indemnify arises, is one of law." Midwest Family Mut. Ins. Co. v. Wolters, 831 N.W.2d 628, 636 (Minn. 2013) (quoting Auto-Owners Ins. Co. v. Todd, 547 N.W.2d 696, 698 (Minn. 1996)). When, as here, the policy does not include a duty to defend, the burden of proving allocation rests with the insured party. UnitedHealth Grp. Inc. v. Columbia Cas. Co., 47 F. Supp. 3d 863, 873 (D. Minn. 2014) (citation omitted).

Below, the Insured Directors requested declaratory relief for 100% of the federal lawsuit and arbitration expenses and costs. The Insured Directors argued in the alternative that if they are not entitled to 100% coverage than they are entitled to 82% of the total litigation costs based on the theory that 14 of the 17 claims are "derivative" of their conduct. The district court found that the Insured Directors had not met their burden of proof and denied declaratory relief. We agree that the Insured Directors failed to carry their burden of proof. We find the district court appropriately considered the only issue properly raised before it – that is, the Insured Directors' all-or-nothing claim for entitlement to 100% of the advance defense costs. The Insured Directors' failure to carry their burden of showing entitlement to 100% coverage was the dispositive issue before the district court and is dispositive on appeal.

## B.  Failure to Conform the Pleadings to the Evidence

The Insured Directors argue that the district court erred in failing to conform the pleadings to include the alternative allocation of 40% for both Unison's federal lawsuit and the arbitration action.  Rule 15(b)(2) of the Federal Rules of Civil Procedure provides that "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings."  Fed. R. Civ. P. 15(b)(2).  "While Rule 15(b) provides parties with methods to amend a pleading any time during or after trial, and is therefore not directly applicable to this situation where the parties intended to amend the complaint before trial, the Federal Rules do recognize instances when a pleading may be amended by the implied consent of the parties."  Cook v. City of Bella Villa, 582 F.3d 840, 852 (8th Cir. 2009).[2]  However, implied consent is presumed only when the parties have "understood the evidence to be aimed at the unpleaded issue." Wichmann v. United Disposal, Inc., 553 F.2d 1104, 1107 n.3 (8th Cir. 1977) (quoting MBI Motor Co. v. Lotus/East, Inc., 506 F.2d 709, 711 (6th Cir. 1974)).  It would not be accurate to say that the parties understood the evidence to be aimed at the Insured Directors' proposed alternative allocations of 82% and 40%.  The evidence advanced by the Insured Directors–consisting chiefly of the policy itself and communications between the parties discussing proposed allocations–was not aimed at any particular allocation.

Further, under Rule 15(b), "[a]mendments are allowed when the parties have had actual notice of an unpleaded issue and have been given an adequate opportunity to cure any surprise resulting from the change in the pleadings."  Cook, 582 F.3d at 852 (alteration in original) (quoting Kim v. Nash Finch Co., 123 F.3d 1046, 1063 (8th Cir. 1997)).  This issue was raised for the first time in the Insured Directors' reply brief to the motion for summary judgment.  The Insured Directors' amended

---

[2]Cook applied Rule 15(b) at the summary judgment stage, as we do here.

complaint sought only "declaratory relief in the form of an order requiring National Union to reimburse 100% of all the fees, costs, disbursements, and expenses incurred by [the Insured Directors] in conjunction with the Unison action . . . whether they be by arbitration or in the U.S. Federal District Court." The Insured Directors sought summary judgment only on a claim of 100% allocation. Only in the summary judgment reply brief did the Insured Directors seek alternative allocations of 82% and 40% for the federal lawsuit and the arbitration–well after National Union would have had adequate opportunity to address them at summary judgment.

Finally, the Insured Directors did not file a Rule 15(b) motion in district court. Rather, they argue for the first time on appeal that we must reverse the district court's decision based on its failure to amend the Insured Directors' complaint *sua sponte*. As the Eleventh Circuit has noted, doing so "would render the summary judgment process an exercise in futility, and would place the onus on the district court to distill any possible argument which could be made based on the materials before the court." Blue Cross Blue Shield of Alabama v. Weitz, 913 F.2d 1544, 1550 (11th Cir. 1990). While the district court may have authority to do so, it has no obligation, absent a request by the party that would benefit from such an allocation.

## III.    Conclusion

The district court did not err in concluding that the Insured Directors failed to meet their burden of proving an allocation different from that proposed by National Union. We affirm the district court's denial of declaratory relief.

_____