#30748, #30819-r-SRJ
**2025 S.D. 40**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

KEVIN ROWE,                                     Plaintiff and Appellee,

    v.

DIONE ROWE,                                     Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
TRIPP COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE CHRISTINA L. KLINGER
Judge

\* \* \* \*

ANDREW R. DAMGAARD
MORGAN F. BREKKE of
Woods, Fuller, Shultz & Smith, P.C.
Sioux Falls, South Dakota                       Attorneys for defendant and
                                                appellant.


AIDAN F. GOETZINGER
QUENTIN L. RIGGINS of
Gunderson, Palmer, Nelson
   & Ashmore, LLP
Rapid City, South Dakota                        Attorneys for plaintiff and
                                                appellee.

\* \* \* \*

ARGUED
APRIL 29, 2025
OPINION FILED **07/23/25**

JENSEN, Chief Justice

[¶1.]      Dione Rowe, aided by her two daughters, sent a letter to the Tribal Land Enterprise (TLE) making disparaging allegations against her ex-husband, Kevin Rowe, who leased Tribal-owned land from the TLE. The letter requested that the TLE cancel Kevin's leases adjacent to Dione's mother's land, and, in turn, lease the land to her daughters. The TLE rescinded Kevin's leases at the next regular board of directors meeting. Kevin then filed this action against Dione alleging tortious interference with a business relationship. Dione moved for summary judgment arguing that her letter to the TLE was an absolutely privileged communication under SDCL 20-11-5(2). The circuit court denied her summary judgment motion. We granted Dione's petition for intermediate appeal. We reverse the circuit court's denial of Dione's motion for summary judgment.

## Factual and Procedural Background

[¶2.]      Kevin and Dione Rowe were married in 1992 and they have two children, Hannah and Heather. Dione initiated divorce proceedings against Kevin in 2018. The divorce was contentious and involved two protection order proceedings that Dione filed against Kevin. A judgment and decree of divorce was entered in July 2020.

[¶3.]      During their marriage, Dione and Kevin owned and leased land for their farming and ranching operation. The leased land included land owned by the Rosebud Sioux Tribe (Tribe) and leased to Kevin by the TLE, a subsidiary of the

Tribe.[1]  The TLE manages the land interests of the Tribe and its tribal members

and has the authority to lease Tribal-owned lands.[2]

[¶4.]          Following the divorce, Kevin continued to lease land from the TLE,

including land that was directly adjacent to property owned by Dione's mother,

Donna Brown.  Kevin had to cross land owned by Donna to access some of the land

he leased from the TLE.  Dione, Heather, and Hannah were engaged in Donna's

farm operation during this time.  In 2021, Heather and Hannah submitted bids to

the TLE to lease some of the land that Kevin was leasing.  They were unsuccessful

in their bids and the TLE continued to lease land to Kevin.  By March 2022, Kevin

was leasing more than 7,500 acres from the TLE.

[¶5.]          In April 2022, Heather and Hannah assisted Dione in drafting a letter

to the TLE, requesting that the TLE "relinquish" Kevin's land leases near Donna's

property.  The letter stated that Dione's daughters had submitted bids, "most

recently a couple of months ago . . . to provide a safe place for their animals[,]"

because Kevin was calling the daughters threatening to shoot their animals.  The

letter alleged that Kevin had a history of drug and alcohol abuse and was physically

and emotionally abusive to Dione, and that Dione and Donna were fearful of Kevin.

Dione believed that Kevin's lease of Tribal land was to gain access to land near

---

1.     The Tribe is incorporated under the authority of the Indian Reorganization
       Act of 1934 (IRA), which created the statutory authority for Indian self-
       governance through the creation of a tribal constitution and tribally chosen
       leadership.

2.     On April 6, 1943, the Rosebud Sioux Tribal Council chartered the TLE as a
       subsidiary organization of the Tribe pursuant to the authority of section 17 of
       the IRA, now found at 25 U.S.C.A. § 5124.

Donna's property to "isolate" Dione with Kevin, and she claimed that Kevin had "attempted to lure [her] to various areas on the [T]ribal land near [her] mother's property." The letter also stated that Dione's daughters "would be willing to take over his leases near my mom's property and are asking for your consideration to do so," and was signed by "Dione, Hanna, and Heather Rowe."

[¶6.]     On June 14, 2022, the TLE held its regular board of directors meeting, where a motion was made to rescind Kevin's leases, and the motion carried. Kevin was not given notice of the meeting. Kevin was notified the next day that his leases had been rescinded by the TLE. Later, some of the Tribal land previously leased to Kevin was leased by the TLE to one of Dione's daughters.

[¶7.]     In December 2022, Kevin initiated this lawsuit against Dione, alleging tortious interference with a business relationship based upon the letter that Dione sent to the TLE. Dione moved for summary judgment, arguing that the communications in her letter to the TLE could not "form the basis for a tortious interference claim because they are statutorily privileged." Kevin resisted Dione's motion and filed a cross motion for partial summary judgment on the issue of liability, claiming the elements for a claim of tortious interference were established.

[¶8.]     The circuit court denied both motions for summary judgment. As to Dione's motion, the court determined that for the privilege to exist, the letter had to be part of an "official proceeding." The court concluded that the TLE meeting in which Kevin's leases were cancelled was a quasi-judicial proceeding. However, the court held that, because the TLE did not follow its own procedures "with regard to termination and cancellation," including notice of the hearing, the TLE meeting was

"not a proceeding authorized by law" and in the court's view, the privilege did not apply.

[¶9.] This Court granted Dione's petition for intermediate appeal of the circuit court's denial of her motion for summary judgment. Dione presents a single issue on appeal, which we restate as follows: whether the circuit court erred in denying Dione's motion for summary judgment based on the official proceedings privilege under SDCL 20-11-5(2). By notice of review, Kevin raises one issue— whether Dione waived the privilege by failing to plead it in her answer.[3]

**Standard of Review**

[¶10.] We review the circuit court's decision on a summary judgment motion "under the de novo standard of review." *Earll v. Farmers Mut. Ins. Co. of Nebraska*, 2025 S.D. 20, ¶ 12, 19 N.W.3d 536, 540 (citation omitted). "We affirm the circuit court 'when there are no genuine issues of material fact and the legal questions have been correctly decided.'" *Id.* (citation omitted). "When the facts are undisputed 'our task is to determine whether the circuit court correctly applied the law.'" *Id.* (citation omitted).

**Analysis**

[¶11.] On appeal Dione presents a straightforward argument that her letter to the TLE is absolutely privileged under SDCL 20-11-5(2) and the communication cannot form the basis for liability to support Kevin's claim of tortious interference with a business relationship. Within this overarching issue, Kevin presents several

---

3. The circuit court, having found the privilege did not apply, did not consider the waiver issue.

arguments against the application of the privilege and maintains that this Court can affirm the circuit court's denial of Dione's motion for summary judgment on any of these grounds.[4]  Specifically, Kevin claims the privilege is inapplicable to a claim for tortious interference with a business relationship.  He also maintains the elements of the privilege are not met because the TLE board meetings are not "official proceedings"; the contents of Dione's letter and its purpose were not related to the TLE's proceedings or its official authority; and the TLE failed to provide notice to Kevin before terminating his leases.  Finally, in response to Dione's argument regarding applicability of the privilege, and in support of the issue he identifies in his notice of review, Kevin argues that Dione waived the privilege because it is an affirmative defense that she failed to raise in her answer.  We consider each of these issues in turn.

### 1.     *Whether SDCL 20-11-5(2) applies to a claim of tortious interference with a business relationship.*

[¶12.]        Pursuant to SDCL 20-11-5(2), a communication is privileged if made "[i]n any legislative or judicial proceeding, or in any other official proceeding authorized by law[.]"  "A communication made under SDCL 20-11-5(2) has an absolute privilege 'and remain[s] privileged whether made with or without malice.'" *Gantvoort v. Ranschau*, 2022 S.D. 22, ¶ 32, 973 N.W.2d 225, 236 (alteration in

---

4.      Kevin argues the circuit court correctly determined that the absolute privilege was inapplicable as a proceeding "authorized by law" because the TLE failed to give notice of the meeting to Kevin before terminating his leases.  He also offers that this Court could affirm on grounds other than those cited by the circuit court.  *See Blanchard v. Mid-Century Ins. Co.*, 2019 S.D. 54, ¶ 16, 933 N.W.2d 631, 636 ("We will affirm a circuit court's decision so long as there is a legal basis to support its decision.").

original) (quoting *Peterson v. City of Mitchell*, 499 N.W.2d 911, 915 (S.D. 1993)).

The "existence of [a] privilege is a question for the Court and therefore is freely

reviewable." *Pawlovich v. Linke*, 2004 S.D. 109, ¶ 8, 688 N.W.2d 218, 221

(alteration added) (quoting *Sparagon v. Native Am. Publishers, Inc.*, 1996 S.D. 3,

¶ 26, 542 N.W.2d 125, 132).

[¶13.]    Although this Court has not previously determined whether the

privilege under SDCL 20-11-5(2) applies to a claim of tortious interference with a

business relationship, the circuit court implicitly held that it does.  Therefore,

before reviewing the basis for the circuit court's decision, we first analyze whether

the privilege applies to the cause of action asserted by Kevin.

[¶14.]    Kevin claims that the privilege was intended to apply only to

defamation and similar torts, noting that SDCL 20-11-5 is found within the chapter

governing liability for defamation (SDCL chapter 20-11).  There is no indication in

the language of the statute or our cases, however, that the privilege in SDCL 20-11-

5(2) is limited to defamation claims.  The express language of this subsection does

not limit its applicability to the tort of defamation, but states that it applies to a

communication made "[i]n any legislative or judicial proceeding, or in any other

official proceeding authorized by law[.]"  Consistent with this language, we have

stated that the absolute privilege "defense avoids *all liability* for the

communication." *Hughes v. O'Connor*, 313 N.W.2d 463, 465 (S.D. 1981) (emphasis

added). The State's public policy, as expressed in statute,[5] absolutely protects communications made in certain identified proceedings covered by SDCL 20-11-5(2), and that absolute privilege should not be frustrated by disallowing certain claims based on a privileged communication while allowing other claims premised on the same communication. *See Janklow v. Keller*, 241 N.W.2d 364, 370 (1976).

[¶15.] Further, the Court has previously applied the absolute privilege in SDCL 20-11-5(2) to a range of other causes of action. In *Janklow*, the plaintiff brought claims for defamation and deceit, arising out of statements made in judicial proceedings. 241 N.W.2d at 364–65. The Court affirmed the dismissal of both claims based on the absolute privilege under SDCL 20-11-5(2). *Id.* at 370. The Court concluded that, through the deceit claim, the plaintiff "simply seeks to recover damages on the same facts and for basically the same reasons and the same injury as set forth in the defamation count. We hold that the absolute privilege as a defense to the defamation count also requires dismissal of the count for deceit." *Id.*

[¶16.] In *Harris v. Riggenbach*, we affirmed the entry of summary judgment on a claim of defamation—as well as claims of negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress—based upon SDCL 20-11-5(2). 2001 S.D. 110, ¶ 14, 633 N.W.2d 193, 195–96. We reasoned that "[t]hese claims are all based on the same facts as the defamation claim" and that the "salutary purpose of the privilege should not be frustrated by putting a new label on the complaint." *Id.*, 633 N.W.2d at 196 (quoting *Janklow*, 241 N.W.2d at

---

5. "The primary sources for declarations of public policy in South Dakota are the constitution, statutes, and judicial decisions." *Two Eagle v. Avel Ecare, LLC*, 2025 S.D. 3, ¶ 24, 17 N.W.3d 242, 249, reh'g denied (Mar. 25, 2025).

370).  More recently, we applied the privilege in SDCL 20-11-5(2) to a claim of invasion of privacy.  *See Gantvoort*, 2022 S.D. 22, ¶ 33, 973 N.W.2d at 236 (noting the "defense of absolute privilege or immunity under the law of defamation avoids all liability.").

[¶17.]    Based on the language of the statute, its purpose, and our prior decisions in which we have extended the application of the privilege to cases beyond defamation, we conclude the official proceedings privilege in SDCL 20-11-5(2) applies with equal force to Kevin's claim of tortious interference with a business relationship.

### 2.    *Whether the elements of the privilege are present.*

[¶18.]    We next consider the presence of the elements of the privilege.  The Court has adopted a four-part test to determine whether a communication is privileged under SDCL 20-11-5(2), requiring that it (1) was made in an official proceeding; (2) had some connection or logical relation to the action; (3) was made to achieve the objects of the action; and (4) involved litigants or other participants authorized by law.  *Gantvoort*, 2022 S.D. 22, ¶ 34, 973 N.W.2d at 236.

### a.    *Whether the board meeting was an official proceeding*

[¶19.]    Kevin initially claims the TLE board meeting was not an official proceeding within the meaning of the absolute privilege statute.  SDCL 20-11-5(2) applies to legislative and judicial proceedings, as well as "any official proceeding authorized by law."  In examining the scope of the official proceeding privilege, we have explained that the "'official proceeding' embraced in the purview of the statute is that which resembles judicial and legislative proceedings, such as transactions of

administrative boards and quasi-judicial and quasi-legislative proceedings, not a meeting of a board of directors of a nonprofit corporation or the like." *Pawlovich*, 2004 S.D. 109, ¶ 12, 688 N.W.2d at 223 (quoting *Waln v. Putnam*, 86 S.D. 385, 394, 196 N.W.2d 579, 583 (1972)). Rather, the board to which the statement was made must be "vested, either directly or indirectly, with oversight authority by the legislature." *Id.* ¶ 15, 688 N.W.2d at 223.

[¶20.] There is no dispute that the Tribe exists as a sovereign entity under the authority of the IRA, and the TLE is a subsidiary organization of the Tribe. The TLE as a subordinate "Tribal Enterprise" is responsible for the operations and management of Tribal lands placed under its control. As a subsidiary of the Tribe, the TLE functions as a part of the governmental structure of the Tribe for the management of Tribal-owned lands.

[¶21.] Further, the TLE is engaged in administrative responsibilities in managing the lands owned by the Tribe. The TLE's existence and actions are specifically authorized under both federal statute and the Rosebud Sioux Constitution and Charter, and the board meetings of the TLE for the management of the Tribal land are quasi-legislative proceedings of the Tribe.

[¶22.] Although Dione's statements about Kevin did not originate within the actual administrative meeting, we have recognized that "communications initiating such proceedings are an indispensable part thereof and are to be protected by the privilege." *Flugge v. Wagner*, 532 N.W.2d 419, 421–22 (S.D. 1995). Dione's letter asking the TLE to terminate the leases with Kevin initiated the discussion about Kevin's leases at the June 14 meeting, which was an indispensable part of the

decisions and actions of the TLE in terminating Kevin's leases. As such, Dione's letter was presented at an "official proceeding authorized by law," within the meaning of SDCL 20-11-5(2).

> b. *Whether the letter had a logical relationship to the TLE board meeting.*

[¶23.] Kevin also argues the second element of the privilege is not satisfied because Dione's letter had no logical relationship or purpose related to the proceedings of the TLE. "The question of some connection or logical relation to the proceedings is one of law." *Flugge*, 532 N.W.2d at 422. Whether the communication bears relevancy to the proceeding "is not a technical legal relevancy but instead a general frame of reference and relationship to the subject matter of the action." *Id.* In assessing the logical relevance of the communication to the proceedings, "[c]ourts have favored a liberal rule that statements are related to the proceedings, thereby retaining the absolute privilege." *Id.*

[¶24.] Kevin acknowledges that the TLE has authority to manage the Tribal land, including leasing the land. He argues, however, that Dione's letter to the TLE "bore no relevance to the subject matter of the June 14, 2022" TLE board meeting and was limited to asking the "TLE to manage and restrict the social interactions between Dione and Kevin."

[¶25.] Contrary to Kevin's claim, the letter not only referenced the parties' relationship, it also specifically asked the TLE to terminate its leases with Kevin. Indeed, this is the crux of Kevin's claim of tortious interference with a business relationship. Termination of Kevin's leases was precisely the result of the June 14 meeting where Dione's letter was presented.

[¶26.]     The express purpose of Dione's letter to the TLE was to address specific concerns with Kevin's lease of Tribal land, and more particularly, her concern with Kevin's lease of land adjacent to her mother's property. This communication directly related to the authority and decision-making of the TLE. Further, Dione's communication was made to achieve her objective by asking the TLE to re-consider its leases with Kevin. The letter was addressed to "Ladies and Gentleman of the Tribal Land Enterprise Board" and expressly requested them to rescind Kevin's leases, action that is under their authority.

[¶27.]     This case is similar in important respects to *Janklow*, in which this Court affirmed summary judgment and dismissal of the plaintiffs' claims based on SDCL 20-11-5(2). *Janklow*, 241 N.W.2d at 365. In *Janklow*, serious allegations of public inebriation and improper action were made against the plaintiffs in a petition to remove an ongoing state court criminal action to federal court. *Id.* Although the allegations were untrue and perhaps relatively unnecessary to the petition, the statements made within the petition were held to be privileged in part because the petition was made to achieve some purpose within the litigation. *Id.* at 369. Similarly, Dione's letter, even if inaccurate, was made to inform and achieve a certain result that was a part of the TLE's regular operations, and accordingly, "had some connection or logical relation to the action." *See Gantvoort*, 2022 S.D. 22, ¶ 34, 973 N.W.2d at 236.

[¶28.]     Accordingly, we conclude that Dione's communication, made during an official proceeding, was relevant, connected, and bore a logical relation to that

official proceeding. The requisites for application of the official proceedings privilege are satisfied on this record.

> c. *Whether the TLE meeting was not authorized by law because of lack of notice to Kevin.*

[¶29.] The circuit court concluded that because Kevin was not provided notice, the meeting was not an official proceeding authorized by law. The court held:

> TLE's very specific policy with regard to termination and cancellation requires that certain things happen. TLE Board of Directors shall provide the lessee within 10 days of written notice of hearing . . . of their intent to use the lease premises and/or cancel the lease.
>
> The lessee shall be given an opportunity to be heard at the board, to have the right to be represented by counsel, to be present - - or to present witnesses on their behalf. The decision of the TLE Board is - - shall be final once this process is followed.

The court concluded:

> [I]t's also undisputed that neither of these parties were advised, including Mr. Rowe, that the lease was going to be even considered for termination or cancellation.
>
> We cannot deem a process official proceedings authorized by law when the law is not followed. And as a result, this [c]ourt, although the process could have been an official proceeding, in this particular case because the process that was authorized by law was not followed, the [c]ourt declines that suggestion and finds that this was not a proceeding authorized by law as the process was not followed.

[¶30.] In assessing whether the privilege applied, the court improperly focused on the alleged erroneous action of the TLE in terminating Kevin's leases without notice to him. But the language of SDCL 20-11-5(2) is focused on whether

-12-

the TLE's meeting was an official proceeding *authorized by law*, not whether the action taken at the proceeding was authorized.

[¶31.]	Congress allowed the tribes to create subordinate corporations to manage tribal affairs. The Rosebud Sioux Tribe created the TLE, which holds regular board of director meetings to manage the Tribal-owned lands, including the leasing of the land. The TLE's meeting where the board voted to rescind Kevin's leases of tribal land was therefore "an official proceeding authorized by law." *See, e.g., Gantvoort*, 2022 S.D. 22, ¶ 35, 973 N.W.2d at 236 (holding that attempt to introduce statements irrelevant to issues during a trial, "while misguided," were still privileged); *Mosley v. Observer Pub. Co.*, 619 A.2d 343, 345 (Pa. Super. Ct. 1993) (concluding the alleged defamatory statements made within a search warrant did not lose their privileged status even if the warrant was "replete with 'false' statements[,]" holding that "once absolute privilege attaches, it may be neither lost nor destroyed."). Thus, a board's action, inaction, or even erroneous action does not negate the privilege under the plain language of the statute. *See Flugge*, 532 N.W.2d at 421 (recognizing a communication under the statute is absolutely privileged even if no action is taken). To hold otherwise would condition the availability of the absolute privilege on whether the court or agency erred in some fashion during the proceeding. There is nothing within the language of the privilege statute to suggest that the Legislature intended such a result. As such, the circuit court erred in determining that, due to the absence of notice to Kevin, the TLE's meeting was not an official proceeding authorized by law and the privilege could not apply.

### 3. *Whether Dione waived her claim of absolute privilege.*

[¶32.]     Kevin also argues that Dione waived the privilege by failing to assert it as an affirmative defense in her answer and raises the same issue in his notice of review.  SDCL 15-6-8(c) provides, "[i]n pleading to a preceding pleading, a party shall set forth affirmatively" any defenses that constitute "an avoidance or affirmative defense."  We require affirmative defenses to be specifically pled, and "failure to do so [will] result in the defense being barred."  *Century 21 Associated Realty v. Hoffman*, 503 N.W.2d 861, 865 (S.D. 1993).

[¶33.]     The Court has not previously considered whether the absolute privilege of SDCL 20-11-5(2) is an affirmative defense.  However, other jurisdictions have concluded that similar privileges are affirmative defenses that must be pled in a party's answer.  *See, e.g.*, *Marble Ridge Cap. LP v. Neiman Marcus Grp., Inc.*, 611 S.W.3d 113, 129 (Tex. App. 2020) ("Like other affirmative defenses, parties are generally required to plead the judicial-proceedings privilege because it is a defense meant to avoid or affirmatively defend against certain claims, including defamation and business disparagement claims."); *Thomas v. St. Luke's Health Sys., Inc.*, 869 F. Supp. 1413, 1443 (N.D. Iowa 1994), aff'd, 61 F.3d 908 (8th Cir. 1995) (holding Iowa's qualified privilege to a claim of slander "is an affirmative defense that must be pleaded.").

[¶34.] Similarly, this Court has held that the defense of sovereign immunity is an affirmative defense to a claim.[6] *Olesen v. Town of Hurley*, 2004 S.D. 136, ¶ 13, 691 N.W.2d 324, 328. Much like sovereign immunity, the defense of absolute privilege is an avoidance defense that operates to eliminate liability for wrongful conduct based upon established constitutional or public policy considerations. The absolute privilege is a defense that is not part of the underlying tort claim and can be a complete defense to a tort based solely upon a privileged communication. For these reasons, we conclude the privilege in SDCL 20-11-5(2) is an affirmative defense required to be pled in a party's answer.

[¶35.] But even where an affirmative defense has not been pled, waiver is not mandated if the "issue was tried by express or implied consent." *Ries v. JM Custom Homes, LLC*, 2022 S.D. 52, ¶ 12, 980 N.W.2d 217, 221–22. "The test for allowing an adjudication of an issue under [Federal Rule of Civil Procedure]15(b) and SDCL 15-6-15(b) tried by implied consent is whether the opposing party will be prejudiced by the implied amendment, i.e., did he have a fair opportunity to litigate the issue, and could he have offered any additional evidence if the case had been tried on the different issue." *High Plains Genetics Rsch., Inc. v. J K Mill-Iron Ranch*, 535 N.W.2d 839, 845 (S.D. 1995) (alteration added) (citation omitted). "Prejudice is often shown when a party is surprised and unprepared to meet the contents of the

---

6. By statute, SDCL 21-32A-3 specifically provides that sovereign immunity is an affirmative defense. While SDCL 20-11-5(2) does not state whether it is an affirmative defense, the operation of the absolute privilege for communications in an official proceeding operates similar to the defense of sovereign immunity.

proposed amendment." *Ries*, 2022 S.D. 52, ¶ 12, 980 N.W.2d at 222 (citation omitted).

[¶36.]     This Court has previously questioned the applicability of SDCL 15-6-15(b) to summary judgment proceedings in *Schecher v. Shakstad Elec. & Mach. Works, Inc.*, 414 N.W.2d 303, 305 (S.D. 1987).  There, we noted that while it "may be appropriate to apply Rule 15(b) to motions for summary judgment," we also found the "majority of other courts which have applied Rule 15(b) have done so in the context of a trial setting." *Id.* "In these cases, evidence presented at trial (usually without objection) provided the basis for a finding of implied consent.  Thereafter, the party seeking to add a defense has been given leave to amend the pleadings to conform to the proof." *Id.* at 305.

[¶37.]     Since our decision in *Schecher*, federal courts applying the federal counterpart to our rule have applied it in the context of summary judgment.  *See, e.g., Brand v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 934 F.3d 799, 803 n.2 (8th Cir. 2019) (on appeal from entry of summary judgment, court considered whether issue was tried by implied consent under Fed. R. Civ. P. 15(b) and noted it previously "applied Rule 15(b) at the summary judgment stage, as we do here."); *Myers v. Moore*, 326 F.R.D. 50, 61 n.7 (S.D.N.Y. 2018) (noting "[t]he circuits have split as to whether Rule 15(b) applies at summary judgment.  The Second Circuit and several other circuits have applied Rule 15(b) at summary judgment[,]" while the Ninth and Eleventh Circuits have concluded otherwise).

[¶38.]     Ultimately, Kevin does not challenge the applicability of the implied consent rule in the context of summary judgment proceedings.  Instead, he argues

his consent should not be implied, as he would have asked for information regarding the privilege in discovery. Kevin contends that if the defense had been raised in the answer he would have inquired into: (1) how Dione made the communication to the TLE in an official proceeding; (2) how the letter was related to the TLE's purpose; (3) the TLE's role as a market participant; and (4) how the TLE functions. But the determination of privilege is a question of law, and the information Kevin cites is factual, not legal. *See Schwaiger v. Avera Queen of Peace Health Servs.*, 2006 S.D. 44, ¶ 8, 714 N.W.2d 874, 878 ("The existence of privilege is a question of law.") (citation omitted). Moreover, Kevin responded not only to Dione's briefing on summary judgment, but also to her statement of undisputed material facts, and with few exceptions, he stated the facts alleged were undisputed. And notably, Kevin did not move for a continuance, seeking additional time to conduct discovery on the issue. *See* SDCL 15-6-56(f) ("Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.").

[¶39.]        In short, Kevin was provided a full and fair opportunity to litigate the privilege issue and the question was one of law, where additional discovery was not necessary. Kevin was not prejudiced by Dione's failure to plead the privilege defense in her answer and he impliedly consented to consideration of that privilege issue. Because Dione did not waive the absolute privilege in SDCL 22-11-5(2), Kevin's notice of review issue also fails.

**Conclusion**

[¶40.] We conclude that the absolute privilege provided in SDCL 20-11-5(2) applies to claims of tortious interference with business relationships, and that the elements of the privilege are satisfied here. Further, although this privilege is an affirmative defense that must be pled, the issue of privilege was tried, within the summary judgment proceedings, by the implied consent of the parties.

[¶41.] Reversed and remanded with direction to enter summary judgment for Dione in accordance with this opinion.

[¶42.] KERN, DEVANEY, and MYREN, Justices, and KELDERMAN, Circuit Court Judge, concur.

[¶43.] KELDERMAN, Circuit Court Judge, sitting for SALTER, Justice, who deemed himself disqualified and did not participate.